The CAPPEL HOUSE FURNISHING COMPANY, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 1688.

United States District Court
S. D. Ohio, W. D.

Feb. 16, 1956.

Andrew S. Iddings, Iddings, Jeffrey & Donnelly, Hugh E. Wall, Jr., Coolidge, Wall & Wood, Dayton, Ohio, for plaintiff.

Hugh K. Martin, U. S. Atty., James E. Rambo, Asst. U. S. Atty., Dayton, Ohio, Lester L. Gibson, Dept. of Justice, Washington, D. C., for defendant.

CECIL, District Judge.

The plaintiff, the Cappel House Furnishing Company, filed its complaint in this Court by which it seeks to recover judgment against the defendant, in the sum of $50,414.20, together with interest and costs thereon. The claim of the plaintiff arises out of a deficiency assessment made against the plaintiff for income taxes in the taxable year ending September 30, 1945.

The defendant, United States of America, has filed an answer in which it denies that the assessment was erroneously made. The case was tried and submitted to the Court upon the pleadings, stipulation of facts, evidence and briefs of counsel.

The facts in the case are not greatly in dispute and are largely contained in the stipulation of facts. The Court, for its Findings of Fact, adopts the facts in the stipulation to the extent they are stated, supplemented by other findings herein made. For the purpose of this decision, the Court will briefly summarize the facts.

The plaintiff, the Cappel House Furnishing Company, was a corporation incorporated under the laws of the State of Ohio in 1914. At all times pertaining to the issues in this case, it was engaged in the retail sale of furniture, with its principal place of business at No. 126–130 East High St., Springfield, Ohio.

The plaintiff's tax returns were based on a fiscal year ending September 30.

On May 23, 1945, there was a fire in the plaintiff's premises, which resulted in the closing down of business operations until October 8, 1945.

The plaintiff carried five policies of business interruption insurance, in the total amount of $51,500.

On December 12, 1945, plaintiff presented its claim for loss sustained under the business interruption insurance policies in the amount of $50,919.78.

In March of 1946, a settlement was made by which the plaintiff received the sum of $43,176.21. This amount was returned as income by the plaintiff in its tax return for the fiscal year ending September 30, 1946.

The plaintiff's business was closed for a total of 136 days. One hundred and thirty days of this time was in the fiscal year ending September 30, 1945, and six days of it was in the fiscal year ending September 30, 1946. The Commissioner of Internal Revenue made a deficiency finding against the plaintiff and adjusted its income and tax thereon for the two fiscal years in question on the basis that 130/136 of the insurance received should have been returned as profits during the fiscal year ending September 30, 1945 and that 6/136 of the amount should have been returned as profits in the fiscal year ending September 30, 1946.

All sales for income tax purposes, were calculated on the installment basis and had been consistently so reported for a number of years.

It is stipulated that if the plaintiff is entitled to recover, the amount to be recovered is $25,424.80, plus interest according to law.

A large part of the plaintiff's business was conducted on the installment sales plan. It is conceded that the plaintiff kept its books on an accrual basis. It is conceded also that for income tax purposes, the plaintiff calculated its income on the installment sales basis. This method was authorized by Section 44(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 44(a), which is applicable to the years here in question, and provided as follows: "(a) Dealers in personal property. Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan, may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price".

It is the government's contention that since the plaintiff's books were kept on an accrual basis, the income from the insurance was taxable for the years 1945 and 1946, in the manner apportioned by the Commissioner. It is the claim of the plaintiff that the income from the insurance should be treated as income from sales and reported in the year received.

"Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the *right* to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues". Spring City Foundry Co. v. Commissioner, 292 U.S. 182, at page 184, 54 S.Ct. 644, at page 645, 78 L.Ed. 1200. See also Patrick McGuirl, Inc., v. Commissioner of Internal Revenue, 2 Cir., 74 F.2d 729.

On cross-examination, Mr. Arthur Sieferman, Certified Public Accountant, called as a witness by plaintiff, was challenged to cite authority for the method of reporting the income from the insurance policies as claimed by the plaintiff. In response, the witness cited regulation 111 29.112(f) which reads as follows: "The proceeds of a use and occupancy insurance contract which by its terms insured against actual loss sustained of net profits in the business, are not proceeds of involuntary conversion, but are income in the same manner that the profits for which they are substituted would have been".

Counsel for the plaintiff seem to think that this settles the question. The fallacy of this is that the witness and counsel for plaintiff as well, mistake income from the insurance policies as income from sales. The policies of insurance provided that "The measure of recovery in the event of loss hereunder shall be the reduction in 'gross earnings' directly resulting from such interruption of business, less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace the building(s), structure(s), * * * which have been damaged or destroyed by fire, commencing with the date of the fire * * * but not exceeding the actual loss sustained by the insured resulting from such interruption of business".

■ The insurance is business interruption insurance and is designed to pay the insured the amount of profits that he would have earned had there been no interruption caused by fire. Although the plaintiff's profits are derived from the sales of furniture and largely from sales of furniture made on the installment plan, the insurance is to protect the insured against loss of profits and not loss of sales. It is the profits that the plaintiff would have earned during the period of closing for which the insurance money is substituted and it is not substituted for the *sales* that the plaintiff

would have made. The fire occurred and the plaintiff's normal flow of business was interrupted. It made no sales during the period of closing. Had the fire not occurred, it is reasonable to suppose that the plaintiff would have made profits far in excess of those reported on its income tax return for the fiscal year ending September 30, 1945. It is these anticipated profits that the insurance policies were designed to cover. They were to be calculated on the basis of what past experience showed the plaintiff might have earned had there been no interruption of business. It seems entirely logical that the money paid by the insurance company should be prorated over the time that business was interrupted. Prorating it in such manner, the conclusion is that the distribution made by the Commissioner of Internal Revenue is correct.

At page 57 of the record, the Court asked Mr. Sieferman for a summary of the income reported for tax purposes for the year prior to 1945. Mr. Sieferman in answer, gave the income reported for the years 1943 to 1947, inclusive. These figures are set forth in the following table. The first column shows the income reported without the inclusion of the money received from the insurance policies. The second column shows the returns with the income from the insurance policies reported in 1946, as claimed by the plaintiff. The third column shows the income from the insurance policies reported in the manner claimed by the defendant.

| 1943 | $20,024.47 | $20,024.47 | $20,024.47 |
| 1944 | 28,915.18 | 28,915.18 | 28,915.18 |
| 1945 | 14,868.36 | 14,868.36 | 56,139.74 |
| 1946 | 52,626.72 | 95,802.93 | 54,531.55 |
| 1947 | 37,563.13 | 37,563.13 | 37,563.13 |

Keeping in mind that the insurance was to insure loss of profits for the time the business was interrupted, it appears from the above table that the defendant's calculation is logical and consistent.

The question arises as to when the right to receive the amount of loss became fixed. The Court is of the opinion

that it became fixed at the time of the fire. That is, the liability of the insurance companies to pay the loss, became fixed at that time.

The question of the amount of the loss had to be ascertained. The Court finds that the insurance companies never disputed their liability under the policies. The amount of the loss had to be determined by examination, investigation and calculation in accordance with the terms of the policies. The policies provide "In determining 'gross earnings' due consideration shall be given to the experience of the business before the fire and the probable experience thereafter".

The evidence shows in this case that before the parties agreed on the amount of the loss, the insurance companies examined the records of the business for the months of October, November and December after the resumption of operation. This was a testing of the results obtained rather than a method of determining loss of gross earnings. It appears that the adjusters for the insurance companies thought that an increase in business during those months may have been caused by the recapture of sales lost during the interruption of the business. Upon investigation, it was concluded that the increased sales were due to an upturn in business.

The Court is of the opinion that the loss when finally determined was a loss of earnings sustained during the period of the interruption of business and as such, must be prorated over the time that the interruption continued.

The question injected into this case by reason of installment sales presents a novel question. No case has been cited by counsel on either side involving business interruption insurance where there were installment sales, nor has the Court been able to find any such case. The case at bar is distinguishable from the International Boiler Works Company v. Commissioner, 3 B. T. A. 283, in that that case did not involve installment sales and the amount of loss was fixed at a per diem amount for the time of interruption of business and not based on loss of profits. However, the Court having found that the loss is a loss for the interruption of business and that the liability of the insurance companies was fixed at the time of the fire, the principle followed in the International Boiler Works case is applicable.

The case of Georgia-Carolina Chemical Company v. Commissioner of Internal Revenue, 3 T.C.M. 1213, is also distinguishable from the case at bar. In that case the insured was a co-insurer with the insurance company. The question of how far, if at all, the insured must participate with the insurance companies in the loss was in dispute. This dispute was not settled until the insurance companies waived the question of co-insurance.

In the case at bar, the extent of the liability was not in question. The insurance companies were liable for the full amount of the plaintiff's loss when determined, up to the limits of the policy.

If installment sales were not involved in the case at bar, it seems that there would be no question as to the accuracy of the government's determination. As hereinabove indicated by the Court, the income in question was insurance in lieu of profits for the period of interruption of business and cannot be considered money derived from sales.

The Court concludes that the plaintiff cannot recover and that its complaint should be dismissed.

The Court considers that this decision is sufficient to meet the requirements of Fed.Rules Civ.Proc. rule 52, 28 U.S.C.A. for a special Findings of Fact and Conclusions of Law.