**W. M. MORTON, Sr., and Milton Taylor,** Trustees, Logan Investment Company Stockholders' Trust, Transferees of Assets of Logan Investment Company, a Missouri corporation, dissolved, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

**Civ. No. 1339.**

United States District Court W. D. Missouri, St. Joseph Division.

Sept. 23, 1966.

Joseph A. Hoskins, of Hoskins, King, Springer & McGannon, and Philip J. Erbacher, Kansas City, Mo., for plaintiffs.

F. Russell Millin, U. S. Atty., Kansas City, Mo., Mitchell Rogovin, Asst. Atty. Gen., Jerome Fink, Stephen Koplan, Attys., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

DUNCAN, Senior District Judge.

The following facts have been stipulated by the parties to this lawsuit and are accepted by the court as its Findings of Fact:

"1. This is an action brought by individuals, resident of and having their offices in the City of St. Joseph, County of Buchanan, State of Missouri, as trustees and transferees of a dissolved corporation against the United States of America for recovery of overpayment of liability as transferees for income tax and interest claimed to have been erroneously collected. Claim for refund of overpayment of liability as transferees for corporation income tax and interest, was filed within the statutory period required for filing of said refund claim. More than six months have elapsed since the filing of said refund claim. The defendant denies that there has been any overpayment of liability as transferees for income tax and interest.

2. Plaintiffs are individuals, acting as trustees for all the stockholders of Logan Investment Company, a Missouri corporation, dissolved, formerly with its principal office in St. Joseph, Missouri. Said corporation was duly qualified and still acting as a corporation both on November 28, 1960 and December 10, 1960.

3. On November 28, 1960, a special meeting of the Directors of Logan Investment Company was held. At this meeting a resolution was adopted providing for dissolution and liquidation of the company as provided by law, and calling a special meeting of the stockholders for December 10, 1960, for the purpose of considering such dissolution and liquidation.

4. Following appropriate notice to the stockholders of the corporation, Logan Investment Company, a meeting of the stockholders of said company was held on December 10, 1960. At this meeting the stockholders unanimously adopted a resolution providing that the corporation be dissolved. The stockholders further adopted a Plan of Liquidation under which the Board of Directors was authorized to sell the so-called Logan Building, being one of the properties owned by the corporation, in its then present condition and the land on which the building stood, to make adjustment of claim against the fire insurance companies insuring the Logan Building on such terms as the directors deemed best, to sell certain other lands and assets at the best price obtainable, to establish an adequate reserve to cover tax liabilities, and to distribute to the stockholders in liquidation the funds derived from the liquidation. Finally, the plan of liquidation set out in said minutes provided that the liquidation proceed in such manner as to comply strictly with the provisions of Section 337 of the Internal Revenue Code.

5. On December 10, 1960, the Board of Directors adopted the same plan of liquidation adopted by the stockholders on said date, and authorized the sale,

for $85,000.00 of the so-called Logan Building in St. Joseph, Missouri, in its then present condition, to Howard Sisson Company, Inc., and authorized the President and Secretary to execute a warranty deed therefor.

6. On December 14, 1960, Articles of Dissolution of Logan Investment Company were filed with the Secretary of State of Missouri.

7. Prior to the above events Logan Investment Company, a Missouri corporation, had held certain rental properties, one of which was the so-called Logan Building. Prior to the adoption of the resolutions of the Directors on November 28, 1960, and of the stockholders and directors on December 10, 1960, calling for dissolution and liquidation of the company, namely, on October 30, 1960, a fire occurred severely damaging the property known as the Logan Building, owned by the corporation, located at the southwest corner of 8th and Edmond Streets, in St. Joseph, Missouri. In the separate resolutions of the stockholders and directors on December 10, 1960, referred to above, the Directors and officers were directed to proceed to adjust and settle the claims against the fire insurance companies insuring the Logan Building on such terms as the directors deemed for the best interest of the corporation.

8. Prior to the above described fire neither the Board of Directors nor the shareholders of Logan Investment Company had adopted a formal plan of liquidation of the company.

9. On December 29, 1960, at a meeting of the Board of Directors of the corporation the following resolution was adopted:

'BE IT RESOLVED, that the offer of the Fire Insurance Companies in settlement of the claims of the Logan Investment Company on account of the fire loss occurring on October 30, 1960, be accepted, and the officers and attorney for the Company be authorized and directed to cause to be executed Proofs of Loss and to take all further action necessary to settle said loss and collect the amounts agreed upon, the names of the Companies and amounts of settlement being as follows:

| | |
|---|---|
| Bankers and Shippers Insurance Company of New York | $21,551.05 |
| Firemen's Fund Insurance Company | 43,102.10 |
| Pacific National Fire Insurance Company | 21,551.05 |
| The Royal Exchange Assurance | 43,102.10 |
| Total .......... | $129,306.30' |

10. A further resolution was adopted by the Directors on December 29, 1960, reading as follows:

'BE IT RESOLVED, that the Secretary and Treasurer of the Company be and he is hereby authorized and directed to make adjustment with the Fire Insurance Company carrying the fire insurance upon the Air Conditioners that were located in the Logan Building on the best terms that settlement can be effected, and that said Secretary-Treasurer execute the necessary Proofs of Loss and take all other action required to effect such settlement.'

11. Payments were made by the insurance companies involved to Logan Investment Company in settlement of the fire loss claims on or about January 28, 1961, totalling $129,306.30 for loss to Logan Building and $1,247.12 for loss to air conditioners.

12. Following the authorization of the shareholders on December 10, 1960, most of the assets of the corporation remaining after the fire loss was sold and the balance of the legal formalities completed and liquidation of the corporation was accomplished on or before November 22, 1961. Articles of Liquidation pursuant to Missouri law were filed with the Secretary of State of Missouri on November 13, 1961, and Certificate of Dissolution of Logan Investment Company was issued by

the Secretary of State of Missouri on November 13, 1961. Said documents were filed with the Recorder of Deeds of Buchanan County, Missouri on November 22, 1961. The remaining assets of the corporation were distributed to shareholders prior to the above, including certain property in the form of Certificate of Deposit in the amount of $40,000.00, issued on August 7, 1961, in the name of Logan Investment Company carrying 3 per cent interest and due February 7, 1962, which was transferred to plaintiffs as trustees for the stockholders of Logan Investment Company. At maturity on February 8, 1962, the certificate was reissued for $39,000.00 in the name of W. M. Morton, Sr. and Milton Taylor, Trustees for Logan Investment Company Stockholders.

13. On or about February 6, 1962, final Federal income tax return of Logan Investment Company, dissolved, for the year 1961, was filed by mail with the District Director of Internal Revenue at Kansas City, Missouri. No gain resulting from the receipt of the fire insurance proceeds described above or from the sale of any of the assets of the corporation on and after the adoption of the above described Plan of Liquidation was included in either the 1960 or 1961 returns of the corporation.

14. On or about December 20, 1960, Form 966—Return of Information under Section 6043 of the Internal Revenue Code of 1954 pertaining to adoption of the plan of liquidation of Logan Investment Company, was received by District Director of Internal Revenue at Kansas City, Missouri.

15. Corporation income tax return, Form 1120, filed for 1961 by the corporation, referred to above, disclosed the receipt of proceeds of $142,567.92 from assets sold under '337', which included the fire insurance proceeds of $129,306.30 related to the Logan Building plus $1,247.12 related to air conditioners and certain other assets sold for a total of $12,214.50, less a basis of $3,587.60, but did not include the difference in taxable income of the corporation for the reason that the corporation took the position that the assets were sold under '337'.

16. Logan Investment Company reported its income for Federal income tax purposes on a cash basis.

17. Payments were made to Glaze Construction Company, St. Joseph, Missouri, on or about December 21, 1960, to cover billing of November 16, 1960, in the amount of $433.14 covering the following items to assist in establishing amount of fire loss.

| | |
|---|---:|
| Estimating and appraisal services— | $ 350.00 |
| Blueprints— | 25.00 |
| Pictures— | 58.14 |
| | $ 433.14 |

18. Payments were made to Glaze Construction Company, St. Joseph, Missouri, on or about December 30, 1960, to cover the following billings relating to property damaged by fire.

| | |
|---|---:|
| Remove Leibowitz sign from building and store same— | $ 47.52 |
| Barricade east and west ends of parking lot south of Logan Building for public safety; rental barricades, pedestrian cover, etc., including labor to remove— | 361.90 |
| Cut joists and remove debris to accommodate removal of files for accountant tenant, second floor Logan Building— | 76.95 |
| Labor to erect barricade, scaffolding, pedestrian runways, and bracing on dangerous cornice, plus rental on scaffold, pedestrian runways and snow fence through month of November— | 1,500.00 |
| | $1,986.37 |

19. The following insurance premiums were paid by Logan Building Corporation to Anderson-Hopkins-Wallace, Inc., Agency:

| | | | |
|---|---|---|---|
| 1/60 | Public liability – 3 years – | $ 266.72 | |
| | Workmen's compensation – 1 year – | 61.60 | |
| | Fire and E.C. building – 3 years – | 1,019.58 | $1,347.90 |
| 6/60 | Fire and E.C. air conditioner 3 years – | | 42.00 |
| 10/60 | Fire and E.C. building – 3 years – | 1,011.50 | |
| | Fire and E.C. building – 3 years – | 1,011.50 | 2,023.00 |
| 11/60 | Excess liability – OL and T – | | 175.00 |
| | | | $3,587.90 |

20. Payment was made on or about December 30, 1960, of $300.00 to Gasper & Taylor, Certified Public Accountants, St. Joseph, Missouri, for services relating to future course of the corporation and various tax consequences— $ 300.00

21. Payments were made in December, 1960 to or for the benefit of directors, in reimbursement of expenses for travel, hotel, meals and etc., for meeting, etc., relating to course of actions to be taken by corporation as to fire loss, rebuilding of property, possible liquidation, commission for securing lease ($250.00) etc.— in amount of— $1,740.76 in total.

22. Payments were made to attorneys for services as follows:

December 29, 1960—W. M. Morton, Attorney— for services regarding fire loss and liquidation of corporation— $1,250.00

December 31, 1960—Hoskins, King, Springer and McGannon, Attorneys— for services regarding various tax consequences of liquidation or continuance of corporation— 300.00

$1,550.00

23. Following the filing of the 1960 income tax referred to above and the filing of the 1961 income tax return, the Internal Revenue Service examined the tax return of Logan Investment Company for both 1960 and 1961. The Internal Revenue Service does not dispute the application of Section 337 of the Internal Revenue Code to the liquidation but determined that the proceeds of the insurance on the building and air conditioners damaged by fire and received on or about January 28, 1961, was to be recognized and taxed to the corporation in 1960 as follows:

| | |
|---|---|
| Insurance proceeds— | $130,553.42 |
| Salvage materials— | 20.00 |
| | $130,573.42 |
| Less: | |
| Allocated basis of building— | ( 7,390.25) |
| Expenses allocated by agent— | ( 6,010.27) |
| Total Gain | $117,172.90 |

24. The Internal Revenue Service determined that the gain in question was to be taxed as long term capital gain at the rate of 25 per cent (as distinguished from no taxation under Section 337), treating it as gain under Internal Revenue Code, Section 1231.

25. The Internal Revenue Service disallowed the deductions for expenditures referred to above in paragraphs 17 through 22.

26. In the course of the examination of the 1960 and 1961 returns of the corporation by the Internal Revenue Service, W. M. Morton and Milton Taylor, Trustees, Logan Investment Company Stockholders Trust, executed as transferees, Treasury Department Form 870, waiving restrictions on assessments in Section 6213(a) of the Internal Revenue Code of 1954 (relating to the making of an assessment without the issuance of a notice of deficiency).

27. Thereafter on or about June 29, 1964, W. M. Morton, Sr. and Milton Taylor, Trustees, Logan Investment Company Stockholders Trust, as transferees of Logan Investment Company, dissolved, issued a check in the amount of $31,096.32 to Internal Revenue Service in payment of the above described transferee liability for a net deficiency in income tax for the year ended December 31, 1960 and December 31, 1961 of the former Logan Investment Company.

28. Following the above events the net deficiency was assessed by the Internal Revenue Service and an additional assessment was made on or about July 10, 1964 in the amount of $6,135.34 representing interest thereon. This assessment plus additional interest of $61.34 or a total of $6,196.69 was paid by W. M. Morton, Sr. and Milton Taylor, Trustees, Logan Investment Company Stockholders Trust, as transferees of Logan Investment Company, a corporation, on September 18, 1964, making a total amount paid on such alleged liability of $37,-293.01.

29. By unwritten agreement among the shareholders of Logan Investment Company, the certificate of deposit referred to in paragraph 12 above was transferred to plaintiffs as trustees for all of the stockholders of Logan Investment Company, to be held for the payment of unknown or contingent liabilities, with an unwritten agreement that upon satisfaction of all liabilities such amount of the remaining balance thereof would be remitted to the shareholders, pro rata. The amount so distributed to plaintiffs as trustees was reported by the corporation on Forms 1099–L as distributed to the shareholders pro rata in their respective pro rata portion.

30. In the examination of the Federal income tax returns of Logan Investment Company by the examining agent in the Spring of 1964, the Internal Revenue Service made an adjustment to taxable income shown on said returns of $2,318.59 representing elimination of insurance proceeds previously reported as received in 1961 to the extent offset by disallowance of deduction of insurance premiums paid in 1960. This resulted in no deficiency for the year 1961 but resulted in an overassessment of $695.57 which was used by Internal Revenue Service to reduce the deficiency for 1960 by a corresponding amount or offset. Since the insurance premium deduction has been determined by this court to be proper for 1960, then this overassessment for 1961 would be proportionately eliminated.

31. On or about February 2, 1965, plaintiffs filed in the Office of the District Director of Internal Revenue, St. Louis, Missouri, claim for refund on Treasury Department Form 843, of amounts paid as liability as transferees for corporation income tax on Logan Investment Company in the amount of $37,293.01 plus interest as provided by law. More than six months has elapsed since the filing of the claim and the plaintiffs have complied with other jurisdictional prerequisites for bringing this suit.

32. W. M. Morton, Sr. and Milton Taylor, are trustees of Logan Investment Company Stockholders' Trust, and transferees of assets of Logan Investment Company, a Missouri corporation, dissolved, to the extent of not less than the amount paid as liability as transferees for income tax and interest of Logan Investment Company, namely $37,293.01.

33. Defendant has admitted in its answer the jurisdiction of this Court to hear this cause of action."

It is undisputed, from the above stipulated facts, that the Internal Revenue Service's decision that the gain derived from the aforesaid insurance proceeds should be taxed as a long term capital gain at 25%, was based upon its determination that while Section 337 was applicable to the liquidation, the "sale" of the Logan Building for purposes of Section 337 had taken place before the corporation adopted its plan of liquidation, and, consequently, was not entitled to the benefit of the provisions of that section.

The principal question for this court's determination, therefore, is whether or not the fact that the fire occurred and the building was damaged prior to the date of the adoption of the liquidation plan renders the insurance proceeds received subsequent to the adoption of the plan of liquidation, non-taxable under Section 337 supra.

Section 337, Internal Revenue Code of 1954, reads in part as follows:

"(a) General rule. — If —

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period."

Thus, as in the United States Court of appeals for the Tenth Circuit recently stated:

" * * * (T)he statute (Section 337) is explicit in making no distinction between distribution of corporate assets in kind and sale of the assets for distribution of the proceeds. The question of gain or loss on the sale therefore is to be ignored by the Inter-

nal Revenue Service." United States v. Mountain States Mixed Feed Company, 365 F.2d 244, 18 AFTR2d 5488.

■ Moreover, it is now well established that where a corporation adopts a plan of complete liquidation, and, thereafter, a capital asset of the corporation is destroyed by fire, and insurance proceeds paid which result in a gain, the corporation is exempt from tax on such capital gain from the involuntary conversion under Section 337, supra. Towanda Textiles, Inc. v. United States, United States Court of Claims, 180 F.Supp. 373, February 3, 1960.

The significant factual difference between *Towanda* and the case at bar is that in the former case, the corporation adopted a plan of complete liquidation *before* its capital asset was destroyed by fire; whereas, in the present instance, the corporation adopted its plan of complete liquidation *after* its capital asset was destroyed by fire.

As heretofore stated, the fire occurred on October 30, 1960; the determination to liquidate occurred on December 10, 1960; the final authority to accept the offer of the insurance companies in settlement of the fire claim was given on December 29, 1960; and the proceeds were received on January 28, 1961.

Thus, the sole narrow question for our determination is whether the sequence of events, in the present instance, wherein the determination to liquidate completely was made after rather than before the fire, prevents the corporation from taking advantage of the non-taxable provisions of the statute. We think it does not.

Section 337 is a special exception to the usual rule that corporate income is taxed at both the corporate and shareholder level. It is a limited exception in that the Congress requires that the corporation adopt a plan of complete liquidation and distribution of the assets within 12 months of the adoption of the plan, for the section to apply.

■ Before Section 337 was enacted, gains resulting to a corporation from

liquidation were taxable against the corporation, and also, against the shareholders, upon distribution of the proceeds to them. It was precisely for the purpose of avoiding this double taxation that Congress enacted Section 337. Towanda Textiles, Inc. v. United States, supra. In this case, the court stated:

"The taxation of the gain derived from an involuntary conversion of the property into cash during liquidation is clearly contrary to the declared purpose of Congress in enacting the section (337), which was to avoid double taxation incident to the liquidation of a corporation, by exempting the corporation from liability for gain derived from the disposition of its capital assets, irrespective of whether or not certain formalities had been observed. Literally, an involuntary conversion is not a sale but what Congress had in mind was a conversion of a corporation's capital assets into cash, whether voluntary or involuntary, and the distribution of the cash to the stockholders. It is not conceivable that Congress would have drawn a distinction between a gain from a voluntary conversion and an involuntary one, had the possibility of an involuntary conversion during liquidation come to its attention. The purpose was to exempt the corporation from liability for the tax and to collect the tax from the stockholders alone."

■ In light of the foregoing, we must hold, in order to carry out the clear intent of Congress in enacting § 337, that an involuntary conversion *followed by* adoption of a plan of complete liquidation by a corporation and the completion thereof within 12 months of its adoption, likewise comes within the intent of Congress when it exempted the corporation from liability for a tax on the gain derived from a sale on its property in liquidation.

It is defendant's contention that when the Logan Building burned, it ceased to have value as a business property, and that on that date it was converted into an unliquidated claim against the several fire insurance companies with which the corporation was insured. For the reasons stated above, we cannot agree.

■ Moreover, the defendant states in its brief that since liquidation had not been planned before the Logan Building burned, it is apparent that the decision to liquidate the Logan Investment Company was the result of a desire to avoid taxation on the proceeds of the fire damaged building. In this connection, it is clear that it makes no difference what the intentions of the parties were, it is clearly not a violation of the statute to take advantage of it for the purpose of avoiding taxation.

## MINOR ISSUES:

The minor issues presented in this case involve the following questions:

(1) Whether certain expenses incurred in connection with the corporation's complete liquidation and dissolution are deductible from ordinary income or may only be used to reduce the capital gain.

(2) Whether insurance premiums paid for 3 years coverage may be deducted in the year paid.

■ In connection with the first minor issue, which, in the present instance, involves payments made to a construction company for appraisal services to assist in establishing the amount of fire loss under the insurance contracts; miscellaneous expenses for labor and materials for work necessitated by the fire; charges of a certified public accountant for work relating to the future course of the corporation and various tax consequences, incurred after the fire; charges of and for the benefit of the corporation's directors, in reimbursement of expenses of travel, hotel, meals, etc., for meeting relating to the course of action to be taken by the corporation subsequent to the fire; and, charges of an attorney for services relating to the fire loss, liquidation of the corporation, and for services relating to various tax consequences thereof; it is well established that fees and expenses incurred in connection with a corporation's com-

plete liquidation and dissolution are deductible from ordinary income as ordinary and necessary business expenses. Pridemark, Inc. v. Commissioner of Internal Revenue, 4 Cir., 345 F.2d 35, 45; Gravois Planing Mill Company v. C. I. R., 8 Cir., 299 F.2d 199; Pacific Coast Biscuit Company, 32 B.T.A. 39, 42–43; C. I. R. v. Wayne Coal Mining Company, 3 Cir., 209 F.2d 152; United States v. Arcade Company, 6 Cir., 203 F.2d 230, 235–236; United States v. Mountain States Mixed Feed Co., 10 Cir., 365 F.2d 244, 18 AFTR2d 5488 (Attorneys' fees). The theory most frequently advanced for this conclusion is that expenses of liquidation do not concern the creation of continuance of a capital asset. 4 Mertens, The Law of Federal Income Taxation, §§ 25, 35.

As recognized in the recent case of United States v. Mountain States Mixed Feed Company, supra:

"The cases cited herein reason that liquidations occur with sufficient frequency in business that a liquidation is an 'ordinary' event within the meaning of Welch v. Helvering, 290 U.S. 111 [54 S.Ct. 8, 78 L.Ed. 212] (12 AFTR 1456), and consequently their costs are 'ordinary' expenses within the meaning of Section 162 of the 1954 Internal Revenue Code. It also appears that they are incurred in carrying on a trade or business within the meaning of the same section."

In connection with the second minor issue, supra, this court is bound by the decision in Waldheim Realty and Investment Company v. Commissioner of Internal Revenue, 245 F.2d 823 (C.A.8), which held that insurance premiums paid in advance may be deducted in the year paid.

In light of the foregoing, we hold that plaintiffs, as trustees and transferees of the Logan Investment Company, a dissolved corporation, are entitled to recover from the United States of America for overpayment of liability as transferees for corporation income tax and interest, in accordance with this decision. It is so ordered.