**WEST STREET–ERIE BOULEVARD CORPORATION, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 378, Docket 32967.**

United States Court of Appeals Second Circuit.

Argued Feb. 20, 1969.

Decided April 1, 1969.

---

Bennet N. Hollander, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Washington, D. C., Justin J. Mahoney, U. S. Atty., of counsel), for defendant-appellant.

John F. Lawton, Syracuse, N. Y. (Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N. Y., Dennis R. Baldwin, Syracuse, N. Y., of counsel), for plaintiff-appellee.

Before Mr. Justice CLARK,* and WATERMAN and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge:

This is an appeal by the United States from a judgment of the District Court for the Northern District of New York in a tax refund action tried before the late Judge Brennan and decided after his death, pursuant to stipulation of the parties, by Judge Ryan of the Southern District sitting by designation. Decision turns on a narrow question relating to § 337 of the Internal Revenue Code of 1954, which provides for nonrecognition of gain or loss from the sale or exchange of certain corporate property if the corporation has adopted a plan of complete liquidation before the sale or exchange and distributes all its assets within 12 months of the adoption.[1]

Plaintiff West Street-Erie Boulevard Corporation (the taxpayer) is a closely held New York corporation. Its principal asset was a warehouse and office building at the corner of Erie Boulevard West and North West Street in Syracuse, N. Y., known as the Bartell property, having a basis of $379,708. It also owned a one-third beneficial interest in a one-story garage at 218–226 North West Street, known as the Forsythe property, having a basis of $21,442. Record title to the Forsythe property was in an unrelated company, Hawley Court Corporation.

On January 7, 1960, the stockholders of the taxpayer adopted a resolution which, after reciting that it had come to their attention "that real property representing their chief asset is to be taken by condemnation," resolved that the directors be authorized to take such action as might be necessary for the dissolution of the corporation and distribution of its assets. Taxpayer promptly filed with the Commissioner Form 966, as provided by I.R.C. § 6043, and a copy of this resolution. The condemnation, however, did not proceed so speedily as had been expected. On December 1, 1960, the State of New York filed an appropriation map of the Forsythe property, thereby acquiring title to that parcel, but nothing occurred with respect to the much more valuable Bartell property, to which the resolution had referred. The taxpayer's stockholders met again on December 27, 1960, and took further action. After referring to the

1. The text of the statute is:
SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.
(a) General Rule.—If—
(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

resolution of January 7, 1960, the new minutes recited that "the anticipated taking of its [taxpayer's] property in condemnation by the State of New York has not as yet been effected, however the taking by the State of New York is imminent," but that such taking "will not allow ample time within the year from January 7, 1960 to effect complete liquidation and distribution of its assets." In light of this the stockholders adopted two resolutions. One revoked the resolution of January 7, 1960; the other authorized the directors to take such action as might be necessary to effect a complete dissolution of the taxpayer, sell its properties, pay its obligations and distribute the remaining assets to its stockholders in complete redemption of their stock. A new Form 966 was duly filed with the Commissioner, along with a copy of the December 27 resolutions. On June 21, 1961, the State filed an appropriation map with respect to the bulk of the Bartell property. The State paid for the Forsythe property in August 1961 and for the Bartell property in late December. On December 22, 1961, taxpayer distributed to its stockholders all its assets, most importantly the claim arising out of the condemnation of the Bartell property.

In its income tax return for 1961, taxpayer reported an operating loss of $14,431 and showed capital gains of $13,731 for the Forsythe property and $329,829 for the Bartell property, a total of $343,560. While this resulted in income of $329,129, the return reported no tax to be due, reciting

"Corporation dissolved 12/6/61 under § 337 of the I.R.C. All assets distributed. Non Taxable."

The Commissioner did not agree. He viewed the January 7, 1960, resolution as the start of the 12-month period, and ruled that taxpayer had failed to meet the requirement of liquidation within it. Accordingly he asserted a deficiency of $85,890, the alternative 25% tax on the capital gains. Plaintiff paid the tax and sued for a refund. Holding that the January 7, 1960 resolution had been effectively rescinded and that liquidation had been completed within 12 months from December 27, 1960, the court directed judgment in plaintiff's favor.[2] The United States has appealed.

As is well known, the purpose of § 337 of the 1954 Code was to provide a fairer and surer way for dealing with the problems of corporate sales and liquidations that had given rise to CIR v. Court Holding Co., 324 U.S. 331, 65 S. Ct. 707, 89 L.Ed. 981 (1945), and United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950). The *Court Holding* case had ruled that when a corporation sold assets at a profit and then liquidated, taxes were payable both by the corporation on the excess of the sale price over the basis of the assets and by the shareholders on the excess of the distribution over the basis of their stock. In contrast *Cumberland* had held that the tax at the corporate level could be avoided if the corporation first liquidated and the shareholders made the sale. As stated by the House Committee on Ways and Means:

> Accordingly, under present law, the tax consequences arising from sales made in the course of liquidation depend primarily upon the formal manner in which transactions are arranged. The possibility that double taxation may occur in such cases results in causing the problem to be a trap for the unwary.
>
> Your committee intends * * * to provide a definitive rule which will eliminate any uncertainty.[3]

2. This was entered in the sum of $79,706. The difference represented an adjustment for refunds previously made for what the Commissioner considered to be over-assessments of the stockholders because of their receipt of the $85,890; it was stipulated that such refunds would be deducted from any recovery by the taxpayer.

3. H.R.Rep.No. 1337, 83d Cong., 2d Sess., 3 U.S.Code Cong. & Adm.News, pp. 4017, 4244 (1954). For the report of the Senate Finance Committee, see *id.* p. 4896.

The "definitive rule" enacted was, as indicated above, that if a corporation adopted a plan of complete liquidation and then distributed all its assets within 12 months, no gain or loss to the corporation on sales or exchanges of defined assets during the 12 months would be recognized. On the other hand, a corporation failing to qualify for the new dispensation would be taxed as theretofore on sales of corporate property even though a complete liquidation was accomplished.

The statutory scheme, doubtless framed with conventional sales primarily in mind, has raised problems in cases where the timing of "sales or exchanges" is beyond the corporation's control. Condemnation is a prime example. If a declaration of taking is made before a plan of complete liquidation is adopted, and title passes under the applicable law, the taxpayer is back in the *Court Holding* situation. See Dwight v. United States, 328 F.2d 973 (2 Cir. 1964); Keller & Goetz, Inc. v. United States, 337 F.2d 858 (2 Cir. 1964), cert. denied, 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1965); Covered Wagon, Inc. v. CIR, 369 F.2d 629 (8 Cir. 1966); Note, Tax-Free Sales in Liquidation under Section 337, 76 Harv.L.Rev. 780, 784–86 (1963). Under New York law the State acquires title to land condemned for highway purposes when it files an appropriation map with the clerk of the county in which the property is located, N. Y. Highway Law McKinney's Consol. Laws, c. 25, § 30(6); see Wendell's Estate v. CIR, 326 F.2d 600 (2 Cir. 1964). Contrast United States v. Morton, 387 F.2d 441, 446 (8 Cir. 1968) (Missouri law;

title passes upon payment). An understandable desire of the plaintiff to avoid the problem that would thus arise from the filing of a map by the State without advance notice led it to adopt the resolution of January 7, 1960.[4] For the same reason, when twelve months had nearly elapsed without the State's having acted with respect to the taxpayer's major asset, it rescinded the earlier resolution and adopted another.

■ We perceive no reason why it should not be possible under certain circumstances for a corporation that has once adopted a plan of liquidation later to adopt another.[5] When the corporation has taken some steps to carry out the original plan of liquidation but abandons it in good faith, the subsequent adoption of a new plan, under different circumstances, should commence a new 12-month period for liquidation under the new plan. The Commissioner has permitted this in a case where there was a significant time interval between the revocation of the old plan and the adoption of a new one and disappearance of the first potential purchaser and appearance of a different one. Rev.Rul. 67–273, 1967–2 Cum.Bull. 137. As against this, "a corporation that has been engaged in a leisurely process of disposing of all of its assets under a plan that is more than 12 months old can hardly expect to get the benefit of § 337 for its final sale by purporting to call off the old plan in favor of an allegedly new one." Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders 396 (2d ed. 1966), citing Malcolm C. Howell, 40 T.C. 940 (1963). A second situation, where neither the language nor the purpose of

---

4. It has been suggested that the problem that has arisen in this case can be avoided by adopting a resolution authorizing liquidation conditional on the taking. See MacLean, Taxation of Sales of Corporate Assets in the Course of Liquidation, 56 Colum.L.Rev. 641, 645 (1956); Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders 396 (2d ed. 1966). The Regulations alleviate the problem to a minor extent in the case of closely held corporations by

providing that qualifying sales "may be made before the adoption of the plan of liquidation if made on the same day such plan is adopted." Treas.Reg. § 1.337–1.

5. This is the view of distinguished tax lawyers. See MacLean, *supra* note 4, 56 Colum.L.Rev. at 646; Dohan, Recent Developments under Section 337: Effect of Other Code Sections, N.Y.U. 25th Inst. on Fed.Tax. 297, 307–08 (1967); Bittker & Eustice, *supra* note 4.

the statute precludes allowing the corporation to commence a new 12-month period by revoking a plan and then adopting a new one is where no sales of property have been made or other action taken pursuant to the original plan of liquidation. This does not permit the corporation to stretch out its liquidation over a period longer than a year but simply gives it a new starting point from which to begin transactions leading to a liquidation when circumstances have made it impossible or undesirable to carry these out as originally scheduled. See Dohan, *supra,* note 5, at 307–08; MacLean, *supra,* note 4, 56 Colum.L.Rev. at 646; Note, *supra,* 76 Harv.L.Rev. at 785 n. 30.

██ It is this latter situation that is claimed to be present here. The plan, both as originally adopted and as readopted on December 27, 1960, contemplated dissolution upon condemnation by the State of the corporation's principal asset, the Bartell property. Unable to take steps on its own to bring this about, taxpayer says it simply held itself in readiness to begin implementing its plan when the State played the opening card. The sole obstacle to acceptance of this argument that we perceive is the condemnation of the Forsythe property prior to revocation and readoption of the plan.[6] Taxpayer asserts that the taking of this property "was not an integral part of either of plaintiff's liquidation plans" and "played absolutely no part in plaintiff's decision to liquidate." The trial judge was persuaded of this, and we accept his findings, but we do not subscribe to the taxpayer's conclusion that therefore the property "is not involved in this litigation."

The record supports the trial judge's conclusion that the stockholders' decision to liquidate was triggered solely by the impending condemnation of the corporation's "principal asset," the Bartell property. The original resolution mentioned only that the "chief asset" was expected to be taken, and the great disparity in value between the Bartell and Forsythe properties indicates persuasively that ownership of the latter was regarded as incidental. If the Forsythe property had not been condemned, the taxpayer would nevertheless have proceeded to liquidate, and it might either have sold its interest in the property or distributed it to the stockholders, as was done with a small portion of the Bartell property not condemned. By the same token it is plain that prospective condemnation of the Forsythe property alone would not have produced a decision to liquidate. Thus the sale of this property at the State's instance was not in partial execution of the liquidation plan and did not prevent taxpayer from beginning a new 12-month period by readopting the plan on December 27, 1960.[7] The sale of

6. Since taxpayer's one-third interest in the Forsythe property was that of a beneficial owner and not of a stockholder in the record owner, the critical date is the filing of the condemnation map on December 1, 1960, not the payment to the record owner by the State or by the record owner to taxpayer.

7. The Regulations provide that the date of adoption of an appropriate resolution by the stockholders constitutes the date of the adoption of the liquidation plan within § 337(a) when the corporation, before adoption of the resolution, either has sold substantially all its property (other than the types excepted in § 337(b)) or has sold no substantial part; "in all other cases the date of the adoption of the plan of liquidation shall be determined from all the facts and circumstances."

Treas.Reg. § 1.337–2(b). If the sale of the Forsythe property prior to the action taken on December 27, 1960, is regarded as sale of a "substantial part" of taxpayer's property, the facts and circumstances nevertheless point to that date as the date the plan was adopted. The prime purpose of this provision of the Regulations is to protect the revenue against "straddles" whereby a corporation sells depreciated assets before adopting a plan, and appreciated assets thereafter, with consequent recognition of loss and nonrecognition of gain. The Commissioner has not had notable success in this regard. See Virginia Ice & Freezing Co., 30 T.C. 1251 (1958), and City Bank of Washington, 38 T.C. 713 (1962), discussed in Note, *supra,* 76 Harv.L.Rev. at 786–88.

the Bartell property and liquidation within 12 months thereafter thus fell within the protection of § 337.

 However, this very argument prevents the taxpayer from taking the benefit of that section for any sales previous to the date of readoption of the plan. In an attempt to have its cake and eat it too, taxpayer has claimed non-recognition of the gain on the Forsythe property in its tax return, its refund claim and its complaint, and may have received the benefit of this in the judgment—results to which it is not entitled if the January 7, 1960 plan was superseded. If that occurred, as the taxpayer insists and the district court held, the earlier plan was superseded in all respects and the gain realized on condemnation of the Forsythe property on December 1, 1960, was unprotected by § 337 or any other section of the Internal Revenue Code. The Government's tactical decision to rely on the condemnation of the Forsythe property solely as evidence that the first resolution was the effective one, without making an alternative protective claim, and our disagreement with that broad position, would not require us to stand by and allow the taxpayer to reap the benefit of a recovery larger than it should have on any view. See Larchfield Corp. v. United States, 373 F.2d 159, 164 (2 Cir. 1966), and authorities there cited. Hence the Government should be free to question whether there was income arising from this sale not offset by operating losses.

While we therefore affirm the determinations that the January 7, 1960 plan was superseded, that the December 27, 1960 plan alone was operative, and that gain on the sale of the Bartell property by the taxpayer should not be recognized, we vacate the judgment and remand the cause for the purpose of eliminating recovery, if any there were, of tax due on the sale of the Forsythe property. No costs.