**KENT MANUFACTURING CORPORATION, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 8105.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 3, 1960.

Decided March 15, 1961.

---

Converse Murdoch, Philadelphia, Pa., for petitioner.

Sharon L. King, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., on brief), for respondent.

Before SOPER and HAYNSWORTH, Circuit Judges, and LEWIS, District Judge.

HAYNSWORTH, Circuit Judge.

██ The validity of asserted deficiencies of income taxes for the taxpayer's fiscal years 1953 and 1954 depend upon the recognition of gain, realized in September 1954 but in fiscal year 1955, upon an involuntary conversion of capital assets. The Commissioner recognized the gain, and reduced the amount of the loss-carryback, accordingly. The Tax Court sustained his view.[1] We disagree.

On July 16, 1954, an explosion destroyed the taxpayer's plant and equipment.[2] The destroyed assets were insured for an amount which exceeded their cost reduced by tax-allowed depreciation.[3] The proceeds of the insurance were received in September 1954. They

---

1. 33 T.C. 930.

2. The taxpayer, a Maryland corporation, was engaged in the business of manufacturing and selling fireworks. It kept its books and filed its returns on the basis of fiscal years ending June 30.

3. There was a substantial operating loss in the fiscal year ending June 30, 1955. The difference between the parties as to the treatment of the gain upon the involuntary conversion affects the amount of the loss carryback to 1953 and 1954.

exceeded the adjusted basis of the destroyed assets by $18,176.81.

In October 1954, the taxpayer's directors and stockholders adopted resolutions that the taxpayer be liquidated. Pursuant to these resolutions, all of the taxpayer's assets, less a reserve to meet creditors' claims, were distributed to stockholders prior to January 1, 1955.

The question, then, is whether this receipt of the proceeds of insurance policies in an amount exceeding the adjusted basis of the destroyed assets resulted from a "sale or exchange" of the destroyed assets within the meaning of § 392 of the 1954 Code.[4] In the light of the provisions of § 1231 of the 1954 Code,[5] we think the gain was the result of a "sale or exchange" within the meaning of the applicable nonrecognition section.

 The Supreme Court had but little choice when, in 1941, it held that gain upon such an involuntary conversion of capital assets was not gain from a "sale or exchange" within the ordinary meaning of those words.[6] It said that the equitable considerations which led to the contest in that case should not produce judicial distortion of Congressional language, but that such matters were properly for the consideration of the Congress. Within a year, Congress included in the Revenue Act of 1942, § 151(b), the pertinent part of which has been carried forward as § 1231(a) of the 1954 Code.[7] That section, quoted in the margin,[8] provides that when recognized gains

from sales and exchanges of assets used in the trade or business of the taxpayer plus gain from involuntary conversions of such property and capital assets held for more than six months exceed recognized losses from the sale, exchange or conversion of such assets, the gains and losses shall be considered as being from the sale or exchange of capital assets held for more than six months. The Congress thereby accepted the invitation that it consider those equitable considerations which had been improperly addressed to the courts. Its response was one of recognition and a direction that, henceforth, in the context of Flaccus, recognized gains from involuntary conversions, when, combined with recognized gains from sales and exchanges, they exceeded losses, should be treated as gains from sales or exchanges of capital assets.

The Commissioner contends that, since § 1231, by its terms, applies only to "recognized" gains, its definitions cannot be imported into § 392, for that section, if applicable, would result in no recognition of the gain. He says, in effect, that § 1231 applies only to give capital gains treatment to gains which otherwise would be taxable as ordinary income, and that it should not be read into, or construed with, any nonrecognition section. If gain here is recognized at all, however, it will be recognized under § 1231 as being, in effect, gain from a sale or exchange of a capital asset. In the circumstances in which § 392 is applicable, it should be construed as extending non-

4. 26 U.S.C.A. § 392.

5. 26 U.S.C.A. § 1231.

6. Helvering v. William Flaccus Oak Leather Co., 313 U.S. 247, 61 S.Ct. 878, 880, 85 L.Ed. 1310.

7. 26 U.S.C.A. § 1231.

8. "§ 1231. Property used in the trade or business and involuntary conversions
"(a) General rule.—If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than six months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *"

recognition to gain which otherwise would be recognized as gain from the sale or exchange of a capital asset.

This precise question was presented to the Court of Claims in Towanda Textiles Inc. v. United States, 180 F.Supp. 373. That court held that because of the provisions of § 1231, gain from the receipt of insurance proceeds in an amount in excess of the adjusted basis of destroyed assets was gain from a sale or exchange within the meaning of § 337, a companion of § 392. We agree with the reasoning of the Court of Claims.

Under the Internal Revenue Code of 1939, alert stockholders, properly advised, could transfer corporate assets to a purchaser without recognition of gain to the corporation. They could do so provided they initiated and conducted the negotiations as stockholders, dissolved the corporation and transferred the assets as stockholders. They could also sell their stock to the purchaser, who could then liquidate the corporation. In either event, no gain was recognized to the corporation, though the selling stockholders were taxed on their gain.[9] If the corporation negotiated the sale, or effected it, however, gain was recognized to it and to the selling stockholders as well. The result was somewhat anomalous, a trap resulting in double taxation for the unwary.

The Supreme Court commented on this situation in United States v. Cumberland Public Service Co.[10]

The purpose of § 337 was to eliminate the hazards in this situation and to avoid double taxation where stockholders chose the more direct route for the achievement of their purpose.[11] By that section, Congress provided that if a plan of liquidation was adopted and all corporate assets, less a reserve for the payment of claims, were distributed to the stockholders within twelve months thereafter, no gain would be recognized to the corporation upon sales and exchanges of property, as defined in the section, within that twelve month period.

When §§ 337 and 392 were adopted, the antecedent of § 1231 had been a part of the Internal Revenue Code for more than a decade. The words "sale or exchange," as used in §§ 337 and 392 are given a reasonable construction if they are held to include every transaction, which, by previously enacted provisions of law, is required to be treated as a sale or exchange. An earlier specific definition may properly color a subsequent use of the same words without redefinition.

Any other construction would be at variance with the Congressional purpose to avoid double taxation in one-year liquidation situations. An illustration will reveal the conflict between the Congressional purpose and the Commissioner's construction of § 337.

The directors and stockholders of a corporation, relying upon the provisions of § 337, adopt a plan of liquidation. The corporation then enters into a contract to sell its fixed assets for $100,000. Those assets have an adjusted basis in the hands of the corporation of $50,000 and are insured against loss by fire for $75,000. If the sale is consummated and the expected gain of $50,000 is realized, no gain will be recognized to the corporation under § 337 if the liquidation is completed within the 12-month period. If, however, the assets should be destroyed by fire before the sale is consummated and when the assets are still at the risk of the seller, the corporate gain

---

9. If the selling stockholders sold their stock, gain would also be recognized to the purchaser when he liquidated the corporation, but his gain would be measured by the higher price he paid for the stock and would not duplicate the gain recognized to the selling stockholders.

10. 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251; see, also, Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981.

11. H.R. No. 1337, 83d Cong.2d Sess. (1954), 1954 U.S.Code Cong. & Adm. News, p. 4244, S.Rep. No. 1662, 1954 U.S.Code Cong. & Adm.News, pp. 4678, 4896, Conf.Rep. 2543, 1954 U.S.Code Cong. & Adm.News, p. 5296.

is only $25,000. If the Commissioner's construction was adopted, he would compound the loss of the greater gain by taxing the lesser at a time, and under circumstances, which inevitably would occasion the duplicate recognition of gain to the corporation and to its stockholders which § 337 was designed to avoid.

Because of the provisions of § 1231, we think the words "sale or exchange" as used in §§ 337 and 392 include involuntary conversions suffered under these circumstances.

Here the involuntary conversion and realization of the gain occurred before the adoption of the liquidation plan. The Commissioner contends that § 392, as § 337, can have no application because the conversion did not occur and the gain was not realized in the course of a previously planned liquidation.

■ For the reason suggested by the Commissioner, § 337 does not apply. That section applies only to gain from sales or exchanges within the 12-month period following adoption of a plan of complete liquidation. No such limitation appears in § 392(b) (1), however. That section, quoted in the margin,[12] simply provides that if all of the assets are distributed before January 1, 1955 in complete liquidation of the corporation, at the election of the corporation, no gain will be recognized to it from the sale or exchange of property during the calendar year 1954. There is nothing in the section which suggests that adoption of a plan of liquidation must have preceded the sale. We find no basis for reading such a limitation into the section.

Section 392 came in by an amendment first offered in the Senate. Section 337 applied only if the liquidation plan was adopted after June 21, 1954 and then only if the sale or exchange occurred within twelve months after adoption of the plan. For prospective operation in subsequent years, it seemed, sufficient. The sponsors of the amendment were concerned about transactions in the current year and the dual recognition of gain which sometimes resulted from the confusion of the prior law. The remedy was a simple provision extending nonrecognition to all gain from the sale or exchange of property, as defined in § 337, during the calendar year 1954 provided only that distribution of corporate assets in liquidation was completed in that calendar year.

In summarizing the Senate amendment which became § 392, the staff of the Joint Committee on Internal Revenue Taxation, stated it would apply "without regard to whether a plan of liquidation has been previously adopted."[13] The Conference Committee Report[14] stated that § 392 applies "whether or not a plan of liquidation is adopted." The legislative history thus furnishes no basis for reading into § 392 limiting words which are not to be found in it. On the contrary, it contains affirmative support for a literal construction and application of the words of the statute.

We conclude that § 392 extended nonrecognition to this gain from the involuntary conversion occurring during the calendar year 1954, and that the deficiencies based upon recognition of that gain were improperly assessed.

Reversed and remanded.

12. "§ 392.
"(a) * * *
"(b) Special rule for certain sales during 1954.—
"(1) Nonrecognition of gain or loss.—If—
"(A) all of the assets of a corporation (less assets retained to meet claims) are distributed before January 1, 1955, in complete liquidation of such corporation; and
"(B) the corporation elects (at such time and in such manner as the Secretary or his delegate may by regulations pre-

scribe) to have this subsection apply, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property during the calendar year 1954 * * * "

13. Summary, Senate Amendments to H.R. 8300, Staff of Joint Committee on Internal Revenue Taxation, 83d Cong.2d Sess. (1954).

14. Conf.Rep. 2543, 83d Cong.2d Sess. (1954), 1954 U.S.Code Cong. & Adm. News, p. 5296.