Joe L. ROSE and Bernedee V. Rose, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 63–327–S.

United States District Court
S. D. California,
Central Division.
March 24, 1964.

Duncan Davidson, San Francisco, Cal., for plaintiffs.

Francis C. Whelan, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Thomas McPeters, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

ALBERT LEE STEPHENS, Jr., District Judge.

This is a civil action brought by plaintiffs against the United States for recovery of an internal revenue tax alleged to have been erroneously or illegally assessed and collected. Jurisdiction is conferred upon this Court by Title 28 U.S.C. § 1346(a) (1).

All relevant facts have been stipulated to by the parties and the matter has been submitted on written briefs.

Plaintiffs are husband and wife who during the years 1959 and 1960 were engaged in the business of boat chartering. On November 14, 1959, plaintiffs purchased a boat, the "Brandt", for use in their business, the cost of which was stated to be $20,574.79. The boat was insured on May 6, 1960, at a value of $40,000.00 by the Boston Insurance Company (hereinafter "insurance company" or "insurer"). Two days later, on May 8, 1960, less than six months after its purchase, the "Brandt" caught fire and sank.

On the day of the sinking, plaintiffs orally notified their local insurance agent who in turn notified the insurance company by telegram of the loss. No written claim was filed with the insurance company by plaintiffs. The approximate location of the sunken vessel is known, but neither the plaintiffs nor the insurance company has employed divers to locate and examine the ship. Plaintiffs undertook no salvage operations, and the insurance company, though it received a bid from a salvage company offering to raise the boat for $2,000.00, has not attempted to raise the boat. Salvage operations are not presently contemplated by plaintiffs or the insurance company.

Plaintiffs filed a joint income tax return for the calendar year 1960 reporting a tax liability of $128.00. Since quarterly payments of estimated taxes totaling $1,000.00 had been made by plaintiffs, the overpayment of $872.00 was credited to plaintiffs' estimated tax for the calendar year of 1961.

Upon review and audit of the 1960 return, the District Director of Internal Revenue on July 27, 1962, assessed a deficiency in the amount of $2,512.58 with interest in the amount of $172.40. Plaintiffs paid the assessment in full on August 9, 1962.

Of the total deficiency assessed, $2,401.42 is attributable to a change in treatment of $19,760.12, which represents the amount received in the settlement of the loss of the "Brandt" over and above the purchase price plus improvement which is the cost basis of the boat. The plaintiffs reported this amount as a long term capital gain, whereas the District Director of Internal Revenue determined the gain to be ordinary income. Over six months prior to commencement of this suit, plaintiffs filed a claim for refund of $2,401.42 with the District Director which was not allowed.

If the gain realized upon settlement of the claim for loss of the boat is to be given the special treatment afforded capital assets held for more than six months, the gain must qualify under Title 26 U.S.C. § 1231(a) as a gain resulting from compulsory or involuntary conversion, as a result of destruction in whole or part, of property used in trade or business. The term "property used in the trade or business" is defined in Title 26 U.S.C. § 1231(b) (1) as " * * property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, *held for more than 6 months * * *.*"

The only dispute between the parties is whether the boat was held for more than six months. If it was, the gain realized can be treated as a long term capital gain; if not, it must be treated as ordinary income.

The government argues that the holding period terminated on May 8, 1960, the date the "Brandt" sank. This date is less than six months after the purchase of the vessel on November 14, 1959. To support this position, the government cites Steele v. United States, 44 A.F.T.R. 1064 (D.C.Fla., 1952), a case in which the Court treated as ordinary income the gain realized from insurance proceeds received in payment for salvage rights and the loss of a vessel, the loss at sea occurring less than six months after the date of purchase of the vessel.

Plaintiffs claim to be in a position distinguishable from that in Steele v. United States. In the Steele case the vessel was an actual total loss. It was lost at sea and its whereabouts unknown. In contrast, the approximate location of the "Brandt" is known and plaintiffs represent that the vessel could have been raised and repaired. Plaintiffs argue that although the boat was no longer in use from the date of loss, the plaintiffs retained an interest in the boat up to the time that they received payment from the insurer for the loss of the boat. Plaintiffs claim that until their interest in the vessel is relinquished, the holding period cannot terminate.

To support this position, plaintiffs have cited three cases. All of these cases concern transfer of title upon the sale or exchange of property. Such cases are not applicable. Of the three types of capital transactions specified in the revenue statutes, "sale", "exchange" or "involuntary conversion", plaintiffs' gain was attributable to the latter. The parties agree that the payment received by plaintiffs for the loss of their boat was not designated as payment for salvage rights nor as consideration for the transfer of title to property. The "involuntary conversion" of this case may not be likened to the condemnation of property by the government where the passage of title to property is, or may be, the significant event. To place emphasis upon the passage of title, is to ignore the nature of the involuntary conversion which in this case was the destruction of property. The event which has given rise to the realization of a gain, the taxable event, is the destruction of the vessel, not the transfer of a property interest in the vessel.

Plaintiffs theorize that the loss of the "Brandt" by sinking was not an actual total loss, but rather a constructive total loss and that consequently until plaintiffs elected to abandon the vessel and claim a constructive total loss, no taxable event had occurred. They argue that they must abandon the vessel to the insurer and that such abandonment must be accepted. Since no notice of abandonment was given and consequently none was accepted, it becomes necessary to find by implication that such was done. So the argument proceeds that when the draft for the full amount of insurance was delivered and accepted by the insured plaintiffs, they impliedly abandoned the vessel and thereby elected to treat the loss as total and that then the insurer impliedly accepted the abandonment by honoring the draft.

A quick look at the California Insurance Code will be instructive. Section 1963 defines a constructive total loss as one which gives to a person insured a right to abandon. Abandonment is defined in Section 1970 as the act of the insured by which, after a constructive total loss, he declares the relinquishment to the insurer of the insured's interest in the subject matter. In Hilton v. Federal Insurance Co. (1932) 118 Cal.App. 495, 5 P.2d 648, the Court pointed out that a condition precedent to abandonment is that the insured investigate sufficiently to be reasonably satisfied that the amount of the loss is sufficient to justify the abandonment. We know that in this case, no investigation was made by the insured.

Reading further in the California Insurance Code, Section 1975 provides that abandonment is made by giving oral or written notice thereof to the insurer. None was given in this case. Section 1976 stipulates the requisites of notice. It must be explicit and shall specify the particular cause of the abandonment.

Section 1981 provides that an acceptance of an abandonment is not necessary to the rights of the insured. And Section 1985 provides that if an insurer refuses to accept a valid abandonment, he is liable as upon an actual total loss. The theory of the plaintiffs seems to bear little resemblance to the law or to the facts of the case.

Perusal of the Insurance Code without reference to the theory of the plaintiffs produces quite a different application of the law to the facts of this case. Section 1961 provides that a total loss is either actual or constructive. Section 1962 provides that an actual total loss is caused by the loss of the subject matter by sinking, among other causes. Section 1967 provides that upon an actual total loss, the insured is entitled to payment without notice of abandonment. Section 1979 provides that whenever a marine insurer pays for a loss as if it were an actual total loss, he is entitled to whatever remains of the subject matter insured or its proceeds or salvage, to the same extent as in the case of a formal abandonment.

It seems quite apparent from the stipulated facts that the loss of the "Brandt" was treated as an actual total loss from the beginning by both parties. The underlying premise of plaintiffs' argument, which is that there was only a constructive total loss, is completely without foundation in fact. The vessel sank. An actual total loss was caused thereby (California Insurance Code, § 1962(b)) absent evidence to the contrary. No one investigated the hulk or explored the possibility of salvage and repair. This left such a possibility in the area of pure speculation and surmise. No notice of abandonment was given because plaintiffs were entitled to payment without such notice (California Insurance Code, § 1967). The insurer paid for the loss as if it were an actual total loss and became entitled to whatever remained (California Insurance Code, § 1979). The facts are so forthright and complete and so exactly fit the pattern of the applicable law that there is no need to indulge in implications of any kind.

The actual total loss occurred when the "Brandt" sank, the owners' right to the full amount of the insurance ripened at the same moment. They no longer had the boat, but a chose in action against the insurer. The property used in the owners' trade or business was involuntarily converted and the taxable event had taken place.

The District Director of Internal Revenue was correct in his determination that the gain realized from settlement of the loss should be treated as ordinary income.

Counsel for defendant is requested to prepare an appropriate judgment. This Memorandum of Decision shall substitute for Findings of Fact and Conclusions of Law as provided in the Federal Rules of Civil Procedure, Rule 52.