**UNITED STATES of America,
Appellant,**

v.

**W. M. MORTON, Sr., and Milton Taylor,
Trustees, Logan Investment Company
Stockholders' Trust, Transferees of Assets of Logan Investment Company, a
Missouri Corporation, Appellees.**

**No. 18760.**

United States Court of Appeals
Eighth Circuit.

Jan. 3, 1968.

William Friedlander, Atty., Dept. of Justice, Washington, D. C., for appellant; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., and F. Russell Millin, U. S. Atty., Kansas City, Mo., were on the brief.

R. Eugene McGannon, of Hoskins, King, Springer & McGannon, Kansas City, Mo., for appellee; Joseph A. Hoskins and Philip J. Erbacher, Kansas City, Mo., of the same firm were on the brief.

Before VOGEL, Chief Judge, and GIBSON and LAY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

The appellant, United States of America (hereafter referred to as "Government") appeals from a judgment entered by the District Court for the Western District of Missouri, the Honorable Richard M. Duncan, Senior District Judge, ordering a refund of income taxes paid by appellees for the year 1960 plus interest to the date of payment, in the amount of $37,293.01. The case was tried to the Court, without a jury, on joint stipulations of facts.[1]

This case on appeal presents two questions: (1) Are the nonrecognition of gain or loss provisions of § 337(a) (26 U.S.C. § 337(a)) of the I.R.C. applicable to a factual situation where a fire loss occurs before a complete plan of liquidation has been adopted by a corporation, but where the settlement of the fire loss claim and the payment thereon did not occur until after the adoption of the liquidation plan? (2) Are expenses incurred in processing and collecting a fire loss deductible as ordinary and necessary expenses of the corporate liquidation proceedings and thus chargeable against ordinary income, or must these expenses be considered as selling and processing expenses, not allowable as a § 162(a) (26 U.S.C. I.R.C. of 1954, §

---

1. The Court's Memorandum Opinion is reported at 258 F.Supp. 922 (W.D.Mo.1966).

162(a)) business expense but chargeable only against the amount of the proceeds collected on the fire loss?

The appellees are Trustees of the Logan Investment Company Stockholders Trust and, as Trustees, hold assets of the Logan Investment Company, Inc., the taxpaying entity against which the tax in question was assessed. Prior to dissolution the Logan Investment Company, Inc. owned certain rental properties. One of the properties called the "Logan Building" was severely damaged by fire on October 30, 1960. Thereafter on November 28, 1960 the Board of Directors adopted a resolution providing for dissolution and liquidation of the corporation, which resolution was approved and in substance adopted at a meeting of the corporate shareholders on December 10, 1960. The shareholders' resolution (1) provided that the corporation be dissolved under a plan of complete liquidation under which the Directors were authorized to sell the Logan Building in its then damaged condition, along with all of the other corporate assets; (2) authorized the Directors to settle, on such terms as they deemed best, the claim against the four insurance company insurers of the Logan Building; and (3) ordered distribution, within the permissible period of twelve months allowed by § 337, of all funds derived from liquidation after establishing an adequate reserve to cover liabilities.

The plan of liquidation adopted by the stockholders on December 10, 1960 was also in turn adopted by the Board of Directors on that same date; and the Directors in carrying out the plan of liquidation authorized the sale of the Logan Building for $85,000. Articles of Dissolution of the corporation were filed on December 14, 1960. On December 29, 1960 the Board of Directors accepted a settlement offer of the four insurance companies covering the loss on the Logan Building. The payment of this loss was subsequently made on January 28, 1961 in the amounts of $129,306.30 for the Logan Building and $1,247.12 for air conditioners. The payment of the insurance proceeds resulted in a gain of $117,172.90, after deducting the remaining allocated undepreciated cost of the Logan Building and $6,010.27 expense allocated by the Internal Revenue agent to the corporate dissolution and to the expense of processing and collecting the fire insurance claim. The corporate taxpayer was on a cash accounting basis.

These expenses are detailed in the District Court's Memorandum Opinion and will not be repeated here. Most of these expenses were incurred in the liquidation and dissolution proceedings, including care and safety precaution measures on the fire damaged building. But also included were appraisal and photo expenses of $433.12 incurred in processing the fire loss claim and a $1250 attorney's fee that covered both services rendered in connection with the fire loss claim and the liquidation of the corporation. This latter amount is not broken down between the two items of corporate liquidation and collection of the fire loss claim.

The Internal Revenue Service treated the gain on the fire loss as a long term capital gain under § 1231, I.R.C. taxable at the capital gain rate. The taxpayer contends that there is no tax due from the corporation as the gain on the fire loss should be treated as a nonrecognizable gain under § 337(a) I.R.C. with the gain subsequently being taxed to the distributee shareholders. The taxpayer also contends that all of the expenses in connection with the dissolution and liquidation of the corporation, including expenses incurred in processing and collecting the fire loss claim, are deductible as ordinary business expenses and thus chargeable against ordinary corporate income for the period in question.

The Government now concedes that the expenses incurred in connection with the dissolution and liquidation of the corporation as distinguished from expenses incurred in collection of the fire loss claim are deductible as ordinary and necessary business expenses. It strenuously urges, however, that expenses in connection with the fire loss claim are

analogous to the selling of a corporate capital asset and should be deductible not as ordinary expenses, but only chargeable against the capital gain realized on collection of the fire loss.

The District Court held: (1) That the involuntary conversion occasioned by the fire loss was not taxable to the corporation under § 337 I.R.C.; and (2) That all of the expenses incurred in the corporate dissolution and liquidation including the expense of processing and collecting the insurance claim were deductible as ordinary business expenses. We affirm the District Court on the first issue and reverse the District Court in part on the second issue holding that the expenses incurred in processing and collecting the insurance claim should be treated as capital expenses incurred in the sale of a capital asset and as such should be accorded the same tax treatment as is accorded the capital asset.

APPLICABILITY OF SECTION 337(a)

Section 337(a), I.R.C. of 1954 (26 U.S.C. § 337(a)) [2] provides for nonrecognition of any loss or gain in the sale or exchange of property occurring in a complete corporate liquidation that complies with the mandate of that section. Any gain or loss resulting therefrom is transferred to and taxed against the distributee shareholders.

■ This remedial section was enacted to equalize the disparate treatment accorded corporate liquidations in Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1954) and United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950), which cases recognized and gave tax significance to the technical method used in the corporate dissolution. The basis, reason, and purpose for the enactment of that section is clearly set forth in the Congressional Reports, Senate Report No. 1622, 83rd Cong., 2nd Sess., pp. 48–49, 258–259 (3 U.S.C. Cong. & Adm. News (1954) pp. 4621, 4677–4680, 4876–4897); House Report No. 1337, 83rd Cong., 2nd Sess., pp. 38–39, A106–A107 (3 U.S.C. Cong. & Adm. News (1954) pp. 4017, 4064, 4244–4245). As stated in the House Report, the section was intended to ignore the technicalities found to be of significance by the courts in deciding whether a sale of corporate assets in liquidation had actually taken place by the corporation or by the shareholders after liquidation in kind. That Report states at pp. 38–39 (3 U.S.C. Cong. & Adm. News (1954), p. 4244):

"* * * Accordingly, under present law, the tax consequences arising from sales made in the course of liquidation depend primarily upon the formal manner in which transactions are arranged. The possibility that double taxation may occur in such cases results in causing the problem to be a trap for the unwary."

■ It is now settled that an involuntary conversion of property into cash as well as a voluntary conversion is within the purview of § 337(a). In Towanda Textiles, Inc. v. United States, 180 F.Supp. 373 (Ct.Cl.1960), the Court of Claims held in a factual situation where a capital corporate asset was destroyed by fire after a complete plan of liquidation had been adopted that the capital gain resulting from collection of insurance proceeds was exempt from corporate tax under § 337(a), stating at p. 376:

"Literally, an involuntary conversion is not a sale but what Congress had in mind was a conversion of a corporation's capital assets into cash, whether

2.  26 U.S.C. § 337(a) reads:
"(a) General Rule.—If—
"(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
"(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corpora-

tion are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period."

voluntary or involuntary, and the distribution of cash to the stockholders."

And, after pointing out it was inconceivable that Congress would have drawn a distinction between a gain from a voluntary conversion and an involuntary conversion, the Court held at p. 376:

"This being true, we must hold, in order to carry out the clear purpose of Congress, that an involuntary conversion comes within the intent of Congress when it exempted the corporation from liability for a tax on the gain derived from a sale of its property in liquidation." [3]

██ Under the plain terms of § 337 any disposition of assets by sale or exchange voluntary or involuntary, must occur on or after the date a complete liquidation plan has been adopted, and then all of the corporate assets distributed, "less assets retained to meet claims", within the 12-month period following the adoption of the liquidation plan. Thus, any sale or disposition of assets occurring before the adoption of a complete liquidation plan would be accorded the usual tax treatment dependent on the circumstances, without the benefit of § 337. In Covered Wagon, Inc. v. Commissioner of Internal Revenue, 369 F.2d 629 (8 Cir. 1966), this Court held that an involuntary conversion of a corporate capital asset in a federal condemnation proceeding was within the purview of § 337(a), but that where the taking of the property had occurred prior to the adoption of a complete plan of liquidation, the resulting capital gain was ineligible for nonrecognition treatment and was taxable income. We there held that the sale occurred at the time the Government filed the declaration of taking and deposited in court the estimated value thereof, which acts caused title to pass from the condemnee to condemnor.

██ As noted in *Towanda,* supra, an involuntary conversion is literally not a sale but is treated as a sale or exchange for tax purposes. The significant question then arises in involuntary conversion cases as to the precise date the sale or exchange occurs. In condemnation cases the law appears to be settled that the significant factor is the date on which title is passed to the condemnor. In federal condemnation cases this occurs upon the filing of the condemnation proceeding and the depositing of the estimated "just compensation" into court. Covered Wagon, Inc. v. Commissioner, supra. In state condemnation cases the court considers the local state law as determinative as to when title passes. Dwight v. United States, 328 F.2d 973 (2 Cir. 1964) held that under New York law, title passed upon the filing of a map and a description of the property in the county clerk's office and not when the condemnation award was paid. Wendell v. Commissioner of Internal Revenue, 326 F.2d 600 (2 Cir. 1964); Wood Harmon Corp. v. United States, 206 F. Supp. 773 (S.D.N.Y.1962); Driscoll Bros & Co. v. United States, 221 F. Supp. 603 (N.D.N.Y.1963) are all New York cases holding that title passes to the condemnor upon the ex parte entry granting application to condemn under a New York City ordinance, and that insofar as the application of § 337 is concerned the sale is made at the date title passes. An adoption of a complete liquidation plan occurring after that date would not bring the corporation with the purview of § 337. It would appear, however, that when title does not pass upon the mere filing of condemnation proceedings, the sale would not occur until at least the condemnation award was made and either paid or made available to the condemnee. In Mountain Water Company of La Cresenta, 35 T.C. 418 (1960) the Tax Court held that an involuntary conversion of

---

3. It is now conceded by the Government that gains and losses on property used in a trade or business resulting from an involuntary conversion shall be considered as gains or losses from a sale or exchange of capital assets. See, § 1231, (26 U.S.C.—I.R.C. 1954, § 1231(a)); Revenue Ruling 64–100, C.B. 1964–1 (Part 1).

the taxpayer's operating and capital assets by condemnation did not occur until the taxpayer made a decision not to appeal the condemnation award and accepted payment of the award. In *Mountain Water* the condemnation award was entered on January 13, 1955 and it was not until April 25, 1955 that the Directors of the taxpayer decided not to appeal and adopted on that same date an informal plan of liquidation of all of the capital assets. The capital gain realized on the condemnation was eligible for nonrecognition under § 337.

In Missouri, as in some other states, title does not pass on condemnation until the award is made and payment thereof is received by the condemnee or deposited into the registry of the court. Feinberg v. Commissioner of Internal Revenue, 377 F.2d 21, 26 (8 Cir. 1967); St. Louis Housing Authority v. Barnes, 375 S.W. 2d 144, 147 (Mo.1964). The state condemnation cases are, therefore, dependent upon the local law as to when title passes and the federal condemnation cases are dependent upon the federal law concerning the passage of title.

The Government contends that an involuntary fire conversion of a capital asset occurs at the time of the fire and likens a fire to a condemnation proceeding, but says that in fire conversion cases the question of title passing is irrelevant as actually no title passes, there only being a personal claim for reimbursement of the fire loss. It is difficult to analogize and to apply the rationale of the condemnation cases to the fire and destruction cases. As pointed out in *Driscoll*, supra, (a condemnation case) at 605 of 221 F.Supp.: "The decision in Kent Mfg. Corp. v. Commissioner [of Internal Revenue,] 4th Cir., 288 F.2d 812 involved a fire loss and is not in point here." The condemnation cases clearly deal with an involuntary or forced sale, and the New York cases construing the New York law hold that the sale occurs at the date of the taking, when also a conclusive right to payment together with interest from the date of the taking is vested in the condemnee. Commissioner of Internal Revenue v.

Kieselbach, 127 F.2d 359 (3 Cir. 1942). But any gain from the condemnation would not be recognized until the award is received. Patrick McGuirl, Inc. v. Commissioner of Internal Revenue, 74 F.2d 729 (2 Cir. 1935), cert. denied 295 U.S. 748, 55 S.Ct. 827, 79 L.Ed. 1693 (1935); Nitterhouse v. United States, 207 F.2d 618 (3 Cir. 1953), cert. denied 347 U.S. 943, 74 S.Ct. 638, 98 L.Ed. 1091 (1954).

The Government also cites some holding period cases that fix the date of destruction of a capital asset as the significant date in fixing the termination of the holding period. Rose v. United States, 229 F.Supp. 298 (S.D.Cal.1964) (vessel destroyed by fire and subsequently sinking) and Steele v. United States, 52—2 U.S.T.C. ¶ 9451 (vessel lost at sea). These cases in dealing with the holding period issue are sound as it would be difficult to hold a capital asset after its destruction, but appear to be of limited relevance in determining when a sale or exchange has taken place in the event of an involuntary conversion of a capital asset through destruction.

The District Court discusses United States v. Mountain States Mixed Feed Co., 365 F.2d 244 (10 Cir. 1966), and Towanda Textiles, Inc. v. United States, 180 F.Supp. 373 (Ct.Cl.1960), and then concludes at p. 929 of 258 F.Supp.:

"In light of the foregoing, we must hold, in order to carry out the clear intent of Congress in enacting § 337, that an involuntary conversion *followed by* adoption of a plan of complete liquidation * * *, likewise comes within the intent of Congress when it exempted the corporation from liability for a tax on the gain derived from a sale on its property in liquidation."

The District Court also held the fact that the liquidation had not been planned before the fire and that the fire loss triggered the decision to liquidate to avoid taxation of the proceeds of the fire damaged building was immaterial as " * * it is clearly not a violation of the statute to take advantage of it for the purpose of

avoiding taxation." 258 F.Supp. at p. 929.

There does not appear to be any case directly in point on the issue of when a sale or exchange occurs by reason of an involuntary fire conversion. In Kent Manufacturing Corporation v. Commissioner, 288 F.2d 812 (4 Cir. 1961), the Court reversed a decision of the Tax Court that recognized a gain from the involuntary conversion of a capital asset. In *Kent* an explosion destroyed the taxpayer's plant and equipment on July 16, 1954. The insurance proceeds were received in September 1954 and were in excess of the depreciated cost basis of the destroyed capital asset. In October 1954 the taxpayer adopted a resolution to liquidate. The question there presented was whether the receipt of the insurance proceeds resulted from a "sale or exchange" of the destroyed assets within the meaning of § 392 of the 1954 I.R.C. The Court held that in light of the provisions of § 1231 of the 1954 I.R.C. the gain was the result of a sale or exchange within the meaning of the applicable nonrecognition section. Section 337 is a companion section to 392, the latter making available "with respect to a plan of liquidation only if the first distribution in pursuance of such plan occurs on or after June 22, 1954" and (contains a special rule for 1954) if all of the assets are distributed before January 1, 1955 in complete liquidation of such corporation. The court then held that even though the involuntary conversion and the realization of gain occurred before the adoption of the liquidation plan that it was within the purview of § 392 as a "sale or exchange", and that the gain was entitled to nonrecognition because § 392 contained no limitation as does § 337 that the gain from a "sale or exchange" within the 12-month period must follow adoption of a plan of complete liquidation. *Kent* in commenting upon § 337 stated at p. 815 of 288 F.2d: "The purpose of § 337 was to eliminate the hazards in this situation and to avoid double taxation where stockholders chose the more direct route for the achievement of their purpose."

The Government now recognizes that an involuntary conversion is a "sale or exchange" under § 337 and it is settled that if the "sale or exchange" took place prior to the adoption of a complete plan of liquidation the gain thereon would not be eligible for nonrecognition under that section. Covered Wagon, Inc., supra; Dwight v. United States, supra, and Wendell v. Commissioner, supra. However, where the sale or conversion takes place at the time of, or after the adoption of, a complete liquidation plan as in *Mountain Water Company*, supra, the resulting gain would be entitled to nonrecognition insofar as the corporate taxpayer is concerned.

The taxpayer here urges that the significant date in apply an involuntary conversion to the "sale or exchange" provision of § 337 is the day on which the insurance proceeds are received, while the Government claims the significant date to be the day on which the capital asset is destroyed. Since no title is involved in a fire loss case of this type, we think the catastrophe is but the commencement of an involuntary conversion that does not come into fruition until, at least, the amount to be received by way of reimbursement for that loss is decided either by agreement or by court action. The payment date is significant for tax purposes in figuring gain but might not be the significant date insofar as the date of "sale or exchange" of an involuntary converted capital asset is concerned. This would not take place until at least there was a court judgment awarding a determined fixed amount or else the parties had come to a settlement agreement on the amount of the loss, which the insurance company would be legally liable to pay in a fixed amount without any further action being necessary on the part of the taxpayer.

█ In any sale or exchange something of value is received for the article sold or exchanged. Usually in a sale the consideration is money which is readily and presently available for use by the

holder or else comparable property which is of immediate benefit to the holder. The mere conversion of a tangible capital asset into a chose in action against an insurance company for an undetermined amount is not a completed "sale or exchange." Collection is predicated upon compliance with policy conditions, which uniformly require a proof of loss and the allowance of a period of time within which the insurance company may make its investigation before suit may be properly instituted. It would thus appear that the "sale or exchange" by involuntary conversion is not completed until either the policy proceeds are received, or an enforceable settlement of a determined amount is agreed upon or a court judgment obtained. There certainly can be no gain to recognize until the amount of the proceeds is determined and made available. Under this reasoning the "sale or exchange" would not have taken place in the case at bar until, at least, December 29, 1960 when the offer of the insurers in settlement of the claims resulting from the fire loss was accepted. Therefore, any gain resulting from the collection of the insurance proceeds would be entitled to nonrecognition under § 337.

## DEDUCTIBILITY OF EXPENSES INCURRED IN PRODUCING A CAPITAL GAIN IN CONNECTION WITH THE COLLECTION OF INSURANCE PROCEEDS IN A COMPLETE CORPORATE LIQUIDATION

The District Court allowed all of the fees and expenses incurred in connection with the corporate liquidation as ordinary and necessary business expenses, deductible under § 162(a), I.R.C. from ordinary income. As authority for its decision the District Court cites Pridemark, Inc. v. Commissioner of Internal Revenue, 345 F.2d 35, 45 (4 Cir. 1965); Gravois Planing Mill Co. v. Commissioner of Internal Revenue, 299 F.2d 199 (8

Cir. 1962); Pacific Coast Biscuit Co., 32 B.T.A. 39; Commissioner of Internal Revenue v. Wayne Coal Mining Co., 209 F.2d 152 (3 Cir. 1954); United States v. Arcade Co., 203 F.2d 230 (6 Cir. 1953); United States v. Mountain States Mixed Feed Co., 365 F.2d 244 (10 Cir. 1966).

The cases cited fully support the general proposition that expenses of corporate dissolution and liquidation are fully deductible as ordinary and necessary business expenses,[4] but only two of the cases examine the crucial issue of whether expenses capital in nature are to be accorded preferential treatment and allowed to be deducted as ordinary and necessary business expenses. *Mountain States* and *Pridemark* so hold. Our case of *Gravois Planing Mill* did not touch on this issue but decided that expenses of a partial liquidation may be deductible as ordinary and necessary business expenses, if partial liquidation is the dominant aspect of a corporate reorganization of its capital structure.

United States v. Mountain States Mixed Feed Co., supra, fully supports taxpayer's contention and held all expenses, including expenses incurred in connection with the sale of assets, are deductible as ordinary and necessary business expenses. The rationale of *Mountain States* is stated at 245–246:

"It is difficult to determine any reason in the authorities or in the statutes for any distinction as to the type or purpose of the legal work involved. It is probable that the attorneys could account for the time they devoted to the corporate dissolution as compared with the sale of assets, but there is no reason why this sale of assets is not as much a part of the liquidation as the dissolution of the corporation. Certainly if the costs of distribution in kind may be deducted as ordinary expenses, the legal cost of the sale of assets should likewise be deductible.

---

4. As noted in *Gravois Planing Mill Co.* at 206 of 299 F.2d: "The theory most frequently advanced for this conclusion is that expenditures of liquidation do not

concern the creation or continance of a capital asset." See 4A Mertens, Law of Federal Income Taxation (1966 Rev.) § 25.35.

Thus it is all a part of the liquidation-dissolution of the corporate entity." The *Pridemark* case, supra, held at p. 45 of 345 F.2d that legal fees incurred in connection with the sale of assets were fully deductible as ordinary and necessary expenses, using the following language:

"Having found a liquidation, we approve Pridemark's deduction of these fees as ordinary and necessary business expenses incurred in liquidation." (Citing *Pacific Coast Biscuit Co.*, supra, and a Law Review note).

The Government, however, strongly contends that expenses which were solely and directly related to the collection and maximization of the insurance proceeds were not ordinary business expenses deductible under § 162(a), I.R.C. but constitute capital expenditures that can only be offset against the capital gain. The Government argues that these types of expenses are similar to selling expenses of broker's fees and attorney's fees incurred in connection with the sale of a capital asset, such as real estate or stock. In the sale of real estate or stock, the fees incurred by way of selling commissions and legal expense in transfer of title are customarily charged against the gross selling price in figuring the net gain. This same principle should hold irrespective of whether the capital gain is recognizable under § 337. We agree with the Government on this issue.

To allow what ordinarily is considered as a capital expenditure in the sale of a capital asset or the collection of insurance proceeds producing a capital gain as an ordinary business expense is thwarting and overextending the congressional purpose in enacting § 337. This remedial legislation had for its purpose the removal of the specter of double taxation assessed on technicalities in corporate liquidations. This purpose was achieved by eliminating any corporate tax on any gain or loss resulting from the sale or exchange of corporate assets in a qualifying plan of complete corporate liquidation and shifting the tax consequences to the distributee stockholders; thus treating the whole transaction of liquidation as though a distribution in kind had been made to the stockholders and the sale or exchange of the assets then made by the stockholders. Under the procedure of the stockholders selling the corporate assets after distribution in kind the usual legal and selling expenses in connection with a sale would be considered as capital expenses chargeable against the sale proceeds. We do not think Congress intended any preference to distributee shareholders of liquidating corporations other than the elimination of double taxation; nor do we think Congress intended to change the prevailing accounting principle of treating capital expenditures as chargeable only against capital gains or losses. See Winer v. Commissioner of Internal Revenue, 371 F.2d 684 (1 Cir. 1967.)

The Court of Claims in Towanda Textiles, Inc. v. United States, 180 F.Supp. 373 (Ct.Cl.1960) considered this specific question and held in a well reasoned opinion at pp. 377–378:

"In computing the gain derived from the collection of the insurance on the property destroyed by fire, it does not seem open to question that the taxpayer should deduct whatever expenses he incurred in realizing this gain. This net gain is what section 337 says shall not be recognized. But, plaintiff says the expenses should not be applied against the expenditure required to realize the gain, but should be allowed as a deduction from other income. Thus, it says: The gain derived should not be recognized, but the cost of realizing the gain should be recognized. This seems to us an illogical and an inadmissible construction of the statute, and contrary to all precedent.

"For many years it has been recognized that fees incurred in realizing a capital gain must be deducted from the gross amount received to arrive at the net gain for tax purposes. * * * [Citations of cases omitted]

\*      \*      \*      \*      \*      \*

"Expenses necessarily incurred to realize a capital gain reduce the amount of that gain and partake of the nature of the gain to which they relate. Cf. Arrowsmith v. Commissioner [of Internal Revenue,] 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6."

This same principle was recognized and applied by the Tax Court with respect to the attorney's fees and broker's commission incurred in connection with a corporation's voluntary sale of a business building and land in a § 337 liquidation. O. F. Ruprecht, 20 T.C.M. 618, 1961-125. As recognized and noted in 4A Mertens, Law of Federal Income Taxation (Rev.1966), § 25.26:

"Fees, such as brokerage, legal or accounting, paid in connection with the acquisition or disposition of property, real or personal, are ordinarily capital expenditures either to be added to its cost or deducted from the selling price in determining gain or loss on its ultimate disposition. This principle is equally applicable in the case of a corporation as in the case of an individual."

The latest case concerning this precise issue was handed down by the Seventh Circuit in Alphaco, Inc. v. Nelson, 385 F. 2d 244, 7th Cir., Oct. 26, 1967. The Court there reversed the District Court's judgment treating broker's commissions, accounting, and attorney's fees incurred in effecting a sale of the taxpayer's capital assets as ordinary expenses in a § 337 liquidation. The Court's reasoning is stated in 245 of 385 F.2d at 244:

" * * * It is our conclusion that the allowance of the costs incident to the sale of capital assets as an ordinary and necessary business expense deductible from ordinary income not only violates a principle which appears basic in the scheme underlying the income tax statute, but is also incongruous with the purpose for which Section 337 was enacted.

＊　　＊　　＊　　＊　　＊　　＊

"The scheme of the income tax statute is that the cost of producing a given type of income is to be accorded the same tax character as the income produced—that related disbursements and receipts should be given consistent tax treatment. Spangler v. Commissioner of Internal Revenue, 9 Cir., 323 F.2d 913, 918.
＊　＊　＊

" * * * [T]o permit the costs of selling the corporate assets to be deducted by the corporation as ordinary business expenses would frustrate the purpose for which Section 337 was enacted."

We think *Towanda* and *Alphaco, Inc.* represent the more logical and correct approach on this narrow issue and we perceive of no reason why the general principle of allocating capital expenses (those incurred solely and directly in producing a capital gain) to capital gains should not be recognized and respected.

In the case at bar the expenses of maintaining the property and the expenses incurred for safety precaution purposes are ordinary and necessary business expenses that are chargeable against ordinary income but the expenses directly incurred in effecting collection of the insurance proceeds, the appraisal and attorney's fees, are capital expenses that are chargeable against and serve to reduce the capital gain realized on the sale of corporate assets by way of the involuntary conversion.

Therefore, the District Court's judgment that the capital gain realized on receipt of the insurance proceeds is eligible for nonrecognition under § 337 is sustained, and the allowance of the attorney's fees and other expenses incurred in the dissolution and liquidation of the corporation is sustained, with the exception that the appraisal fee and incidental expenses and the attorney's fee directly related to the collection of the insurance proceeds should be treated as capital expenses that serve to reduce the capital gain. Since the attorney's fee of $1250 is stated to be for services regarding the fire loss and liquidation of the corporation, it is necessary to vacate the judg-

ment of the District Court on the appraisal and incidental expenses in connection therewith and the attorney's fee, and remand with direction to determine which part of the attorney's fee expense falls in the category of capital expenses and is thus chargeable as an offset against the insurance proceeds and what part of the attorney's fee is allowable as an ordinary expense of the liquidation and dissolution.

Sustained in part and reversed in part with remand for proceedings consistent with this opinion.