**CENTRAL TABLET MANUFACTURING COMPANY, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 72–1582.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1972.

Decided July 12, 1973.

---

period after the adoption of a plan of complete liquidation. This appeal requires us to determine whether the involuntary conversion (which equates with a sale or exchange of the property for purposes of § 337) occurs when the property is destroyed or when the policy proceeds are received because this taxpayer adopted a plan of complete liquidation after a fire but before receipt of the insurance proceeds. In an action for refund of $81,732.39 in taxes paid under protest, the district court determined that the involuntary conversion did not occur until the insurance proceeds had been paid. We hold that the conversion took place at the time the property was destroyed and reverse the judgment of the district court.

Appellee Central Tablet Manufacturing Company was an Ohio corporation with offices and manufacturing facilities in Columbus, Ohio. Until 1965 it employed a sizable labor force and was a profitable manufacturer of writing tablets, school supplies, art materials, and related articles. On August 13 of that year, taxpayer's production and maintenance employees went on strike. While the strike was in progress, an accidental fire on September 10, 1965, extensively damaged or destroyed the greater part of appellee's equipment, inventory, and building. Taxpayer, at the time of the fire, carried both fire and business interruption insurance, and timely notified the insurance carrier of the loss.

Although the insurance carrier questioned neither the validity of the insurance contracts nor the fulfillment of the conditions for payment thereunder,[2] it

David English Carmack, Atty., Tax Div., Dept. of Justice, for defendant-appellant; Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, William A. Friedlander, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief; William W. Milligan, U. S. Atty., of counsel.

Larry H. Snyder, Chamblin, Snyder & Casey, Columbus, Ohio, for plaintiff-appellee.

Before McCREE and KENT,* Circuit Judges, and McALLISTER, Senior Circuit Judge.

McCREE, Circuit Judge.

Section 337 [1] of the Internal Revenue Code of 1954, as amended, has been judicially interpreted to provide for nonrecognition of a capital gain realized by a corporate taxpayer upon receipt of fire insurance proceeds paid after the destruction of property, if both the fire and payment occur within a 12-month

---

* Judge Kent died on May 28, 1973 and did not participate in this decision.

1. The pertinent portion of § 337 is as follows:

§ 337. *Gain or loss on sales or exchanges in connection with certain liquidations*

  (a) General rule.—If—

    (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

    (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

2. Mr. James A. Wroe, the insurance adjuster assigned to this case, testified that "it was obvious that there was a fire. It was in progress when I was first on the scene. Now, liability is not a factor

did dispute the amount to be paid under each policy.[3] Negotiations between the taxpayer and the insurer began on November 1, 1965, to adjust the payments due under each policy. These efforts culminated in an agreement on the building claim on May 20, 1966 and on the personal property and other claims on August 25 of the same year.[4] However, on May 14, 1966, six days before the first settlement and a full nine months after the fire, the shareholders of Central Tablet voted to dissolve the corporation and to liquidate its assets. Within the succeeding year, all corporate assets were collected, debts were paid, liquidating distributions were made to the shareholders, and, on May 3, 1967, a reserve was deposited in trust for the shareholders in the Ohio National Bank of Columbus, Ohio to await payment of final debts in completion of the liquidation.

As an accrual-basis taxpayer, appellee treated the gain realized from the fire insurance proceeds as nonrecognizable under IRC § 337. However, the Commissioner of Internal Revenue determined that the taxpayer had not qualified for this treatment because the shareholder liquidation vote came after the fire, which the Commissioner regarded as the time of conversion and thus of the "sale or exchange" to which

§ 337 refers. The taxpayer paid the deficiency assessed by the Commissioner and initiated a timely refund suit in the district court.

The district court, recognizing that this Circuit had not previously decided when an involuntary conversion occurs for purposes of § 337, followed the holding of the Eighth Circuit in United States v. Morton, 387 F.2d 441 (8th Cir. 1968), and entered judgment in favor of the taxpayer. The Government has appealed.

It is important at the outset to comment upon an uncontested issue. The Government does not now contest the treatment of a fire loss as a "sale or exchange" under § 337, although this is contrary to its position prior to 1964. Shortly after the passage of the Internal Revenue Act of 1954, the Commissioner of Internal Revenue, through Rev.Rul. 56–372, flatly stated that a casualty loss was not a sale within the meaning of § 337.[5] This position was vigorously and consistently, although unsuccessfully, advocated before the court of claims[6] and the Fourth Circuit.[7] But in 1964, in Rev.Rul. 64–100, the Commissioner finally capitulated to the weight of mounting authority by revoking Rev.Rul. 56–372 and adopting the prevailing judicial view.[8]

---

there. I mean, the contract provides the coverage for fire, and what remains then, is to establish the extent of damage." He then testified that neither he nor the insurer ever challenged or considered challenging the insurance coverage in this case because there was no sign of arson.

3. The insurer asserted the applicability of a coinsurance clause in the fire policy on the building, and challenged the company's valuation of the building and machinery at the time of loss and the cost of repair of the few repairable pieces of machinery.

4. Payment for the building claim was made on June 15, 1966, in the amount of $174,-595.05 and for the personal property claim on November 17, 1966, in the amount of $104,609.27.

5. "Accordingly, it is held that the receipt of fire insurance proceeds from the com-

plete destruction of a building by fire, resulting in an involuntary conversion, does not constitute a 'sale' for the purpose of obtaining nonrecognition of gain or loss benefits where liquidation of corporate assets is made pursuant to section 337(a) of the Internal Revenue Code of 1954." Mertens, Law of Federal Income Taxation, 1954–57 Rulings 389 (1958).

6. Towanda Textiles, Inc. v. United States, 180 F.Supp. 373, 149 Ct.Cl. 123 (1960).

7. Kent Manufacturing Corp. v. Commissioner of Internal Revenue, 288 F.2d 812 (4th Cir. 1961).

8. "Consistent with the *Towanda Textiles Inc.* and *Kent Manufacturing Corporation* decisions, conversions of property of the type described in section 337 of the Code will be treated as sales or exchanges for purposes of that section, where such conversions result in loss as well as gain,

The sole issue before us is on what date, for purposes of § 337, does the involuntary conversion that equates with the "sale and exchange" occur when insured capital assets are destroyed by fire. For the reasons hereinafter stated, we hold that the date the fire occurs is the date on which the conversion takes place for purposes of determining the applicability of § 337. Accordingly, since the appellee failed to adopt a plan of liquidation before the fire occurred, it does not qualify for nonrecognition of the gain from insurance proceeds.

The taxpayer insists that in this case, the involuntary conversion by fire that equates with a sale or exchange did not occur until the insurance proceeds were finally paid. He relies on United States v. Morton, *supra.* The Government, on the other hand, contends that the date of the fire should be regarded as the date of "sale."

We respectfully decline to follow *Morton.* In that case the Eighth Circuit analogized the involuntary conversion to a commercial sale where "the consideration is [normally] money which is readily and presently available for use by the holder or else comparable property which is of immediate benefit to the holder." 387 F.2d at 447–48. It determined that the "sale" could only be concluded when the taxpayer could specifically quantify the consideration it would receive, either by judgment or agreement. *Id.* However, this view misapprehends the purpose of § 337.

■ The legislative history indicates that § 337 was enacted to establish an easy-to-follow and well-defined corporate procedure by which the capital gains realized in liquidation sales would not be taxed to the corporation, but only to the shareholders upon distribution to them of the proceeds as liquidating dividends. In the ten years preceding the adoption of the Internal Revenue Act of 1954, two Supreme Court cases created considerable confusion concerning the way in which a corporation could escape taxation of gains under IRC § 22(a) (1939), from the sale of all its assets after a decision to liquidate the business. In Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S. Ct. 707, 89 L.Ed. 981 (1945), the Supreme Court upheld the tax court's determination that the corporation's breaking off negotiations to sell its only asset, an apartment building, and its subsequent conveyance of the building as a liquidating dividend to its sole shareholders, a husband and wife, who later sold it to the same persons with whom the corporation had been negotiating and reduced the sale price by the $1,000 down payment given to the corporation, "showed a sale by the corporation rather than by the stockholders . . . ." 324 U.S. at 332, 65 S.Ct. at 708. Although the court of appeals had reversed the tax court because it drew different inferences from the undisputed facts, Justice Black, in reiterating that findings of the tax court are binding on appellate courts, reasoned that

[t]he incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. . . . To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress. 324 U.S. at 334, 65 S.Ct. at 708.

Five years later in United States v. Cumberland Public Service Co., 338 U.S.

---

regardless of whether such property is the type described in section 1231 of the Code and regardless of whether such property has been held for more than six months." Mertens, Law of Federal Income Taxation, 1961–65 Rulings 636 (1966).

451, 70 S.Ct. 280, 94 L.Ed. 251 (1950), Justice Black, again speaking for the majority, this time upheld a court of claims determination that the corporation's shareholders had properly negotiated the sale of corporate assets distributed to them in kind in a partial liquidation without incurring the corporate tax liability of IRC § 22(a).

Although different outcomes resulted, there are many similarities in the two cases. In both *Court Holding* and *Cumberland,* the objective was the same: avoidance of corporate taxation. There was an offer to buy made to each corporation before negotiations with the shareholders commenced. The corporate assets were distributed in kind to the shareholders in both instances. Both sets of shareholders intended to sell the assets immediately upon receipt. Both sets of shareholders received all the proceeds of the sale.

The only significant difference appears to be that in *Court Holding,* the two shareholders were also the managing officers of the corporation and merely changed hats in negotiating with the same purchaser after the apartment building was deeded to them. In *Cumberland* there were shareholders in addition to those who retained managerial positions, and this fact arguably implies that activities of the managing shareholders during the initial negotiations served broader interests than those of the corporation alone.

But this theoretical difference ignores the practical control that relatively small numbers of shareholders in closely held corporations exercise over corporate decision-making. Such a tenuous difference should not justify denying nonrecognition to one closely held corporation and granting it to another when the shareholders of both corporations have the same motives and exercise the same degree of effective control. These cases illustrate the difficulty of distinguishing between a sale by a corporation and a sale by its shareholders. Nevertheless, as Mr. Justice Black observed in *Cumberland,* the existing statutory scheme made such an inquiry necessary:

> The oddities in tax consequences that emerge from the tax provisions here controlling appear to be inherent in the present tax pattern. For a corporation is taxed if it sells all its physical properties and distributes the cash proceeds as liquidating dividends, yet is not taxed if that property is distributed in kind and is then sold by the shareholders. In both instances the interest of the shareholders in the business has been transferred to the purchaser. . . .

> Congress having determined that different tax consequences shall flow from different methods by which the shareholders of a closely held corporation may dispose of corporate property, we accept its mandate.

338 U.S. at 455–456, 70 S.Ct. at 282.

The Congress, four years later in the course of its revision of the entire tax code that resulted in the Internal Revenue Code of 1954, attempted to remedy this unsatisfactory situation. The House Committee resolved that, since ". . . under present law, the tax consequences arising from sales made in the course of liquidation depend primarily upon the formal manner in which transactions are arranged, . . . [y]our committee intends . . . to provide a definitive rule which will eliminate any uncertainty." 3 U.S.Code Cong. & Admin.News 1954, at 4244. The remedial rule enacted, § 337(a), permitted only ". . . the imposition of a single tax at the shareholder level upon property sold during the course of a liquidation irrespective of whether the corporation or the shareholder in fact effected the sale . . . ." *Id.* at 4245. Even prior negotiations have no effect: "Since subsection (a) refers to 'a sale' the fact that negotiations have been commenced prior to sale is immaterial . . . ." *Id.* However, the statute clearly requires, as taxpayer concedes, the adoption of a plan of complete liquidation be-

fore the sale or exchange of property occurs. *See* note 1 *supra.*

■ It is clear, then, that Congress decided to grant nonrecognition treatment only to a corporation that had already decided to cease operations and liquidate. It eliminated the necessity of determining whether a sale of all the corporate assets by shareholders to whom the assets had been distributed as a liquidating dividend was, for tax purposes, a sale by the corporation. The judicial extension of the section to provide for nonrecognition of a gain when the assets are involuntarily converted either by destruction or condemnation was intended to prevent an injustice to shareholders who had adopted a plan of liquidation but who thereafter lost their property by destruction or eminent domain before it could be sold. *See* Towanda Textiles, Inc. v. United States, 180 F.Supp. 373, 149 Ct.Cl. 123 (1960). To expand the statute further by construing it to permit nonrecognition when the property is destroyed before adoption of a plan of liquidation would, instead of preventing injustice to a taxpayer that had decided to liquidate, give it an advantage over other taxpayers by permitting it to decide after destruction of the property whether to rebuild with insurance proceeds or to liquidate. The Congress has provided relief for taxpayers who experience casualties and elect to use insurance proceeds to rebuild. Section 1033 provides for nonrecognition of gains from insurance proceeds if they are employed to replace the destroyed property within a stipulated time. We decline to read § 337 to give the same relief to taxpayers who decide to retain the insurance proceeds and go out of business. Section 337 is a statute designed to prevent double taxation when a corporation is committed to liquidation, and was not intended to serve as a relief measure for taxpayers who by fortuity suffered a destruction of corporate assets and still realized a gain. We have recently reaffirmed in a case involving another nonrecognition statute

the "well settled principle that statutes granting tax exemptions or deferments must be strictly construed," Elam v. Commissioner of Internal Revenue, 477 F.2d 1333 (1973), and in obedience to that principle we conclude that the sale or exchange experienced by appellee in this case occurred on the date when its property was destroyed.

Reversed and remanded for further proceedings consistent herewith.